**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ULTIMATEPOINTER, L.L.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 6:11-CV-496-LED** |
| **v.** | § | **CASE NO. 6:11-CV-571-LED** |
| | § | |
| **NINTENDO CO., LTD., *et al*.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion to Strike Plaintiff UltimatePointer, LLC's ("UltimatePointer") P.R. 3-1 Infringement Contentions (Docket No. 288) and Defendants Nintendo Co., Ltd. and Nintendo of America Inc.'s (collectively, "Nintendo") Motion to Compel a Complete Response to Individual Interrogatory No. 1 (Docket No. 289). The Court heard arguments regarding these motions on November 14, 2013. Based on the parties' briefings and arguments, the Court **GRANTS IN PART** Defendants' Motion to Strike P.R. 3-1 Infringement Contentions and **GRANTS IN PART** Nintendo's Motion to Compel a Complete Response to Individual Interrogatory No. 1.

**BACKGROUND**

UltimatePointer alleges Nintendo and nineteen Retailer Defendants infringe U.S. Patent Nos. 7,746,321 ("'321 Patent") and 8,049,729 ("'729 Patent"). Nintendo denies UltimatePointer's infringement claims and seeks a declaration that this case is exceptional under 35 U.S.C. § 285.

The '321 and '729 Patents are directed to using a handheld direct pointing device to control placement of a cursor on an image being shown on a large screen display. '321 Patent,

Abstract; '729 Patent, Abstract. Generally, the inventions track the movement of a direct pointing device as the position and orientation of the direct pointing device change within a three-dimensional space. The accused Wii system uses a Wii remote to control the placement of a cursor on an image. Docket No. 283, Ex. 1 at 19. It does so using a complementary metal-oxide-semiconductor ("CMOS") sensor integrated into the front of the Wii remote, which senses infrared light. *Id.*

After the Court construed the claims in this case, UltimatePointer filed a third set of amended infringement contentions. Defendants subsequently filed a motion to strike three of those contentions. Additionally, during the course of discovery, Nintendo served Interrogatory No. 1 on UltimatePointer. UltimatePointer objected to and refused to fully answer that interrogatory. Nintendo then filed a motion to compel UltimatePointer's complete response to Interrogatory No. 1.

**DEFENDANTS' MOTION TO STRIKE P.R. 3-1 INFRINGEMENT CONTENTIONS**

Defendants request the Court to strike three sets of infringement contentions. First, they ask the Court to strike UltimatePointer's contentions for claims requiring an "image sensor."[1] Docket No. 288 at 7–9. Second, they request the Court to strike UltimatePointer's doctrine of equivalents theory for the claims containing the "coupled to" limitation.[2] *Id.* at 9–10. Finally, Defendants ask the Court to strike UltimatePointer's contentions for claims requiring software instructions[3] or, alternatively, to order UltimatePointer to supplement those contentions with pinpoint citations to source code. *Id.* at 10–14.

[1] Claims 1, 3, 5, 6, and 12 of the '729 Patent.
[2] Claims 27, 31–34, and 37 of the '321 Patent and claims 1, 3, 5, and 6 of the '729 Patent.
[3] Claims 27, 31–34, 37, 44, 47, 51, and 52 of the '321 Patent and claims 1, 3, 5, and 6 of the '729 Patent.

**APPLICABLE LAW**

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). Patent Rule 3-1 requires a party asserting infringement to serve infringement contentions on each defending party. A plaintiff must "set forth specific theories of infringement at the outset of the case." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006). These "contentions must be reasonably precise and detailed . . . to provide a defendant with adequate notice of the plaintiff's theories of infringement, [but] they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement." *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. 2009). "Nevertheless, a party may not rely on vague, conclusory language" in its infringement contentions. *Global Sessions LP v. Travelocity.com LP*, No. 6:10-cv-671, 2012 WL 1903903, at *2 (E.D. Tex. 2012). However, the Court has broad discretion allow parties to amend infringement contentions. *SFA Systems LLC v. Amazon.com, Inc., et al.*, No. 6:11-cv-52, Docket No. 415 (E.D. Tex. 2013).

**ANALYSIS**

***"Image sensor" contentions***

Defendants argue UltimatePointer's contentions for claims requiring an "image sensor" are inadequate under P.R. 3-1 because they do not identify how the accused products meet the Court's claim construction. Docket No. 288 at 7–9. The Court construed "image sensor" as "a device that measures the intensity of reflected light from an image." Docket No. 268. Therefore, according to Defendants, UltimatePointer's infringement contentions should explain how the accused CMOS sensor "measures" light emitted from the infrared lights of the sensor bar, how

that light is "reflected from an image," and what that "image" is. Docket No. 288 at 8; Docket No. 295 at 2.

UltimatePointer asserts its contentions satisfy the requirements of P.R. 3-1 because the contentions identify how the accused CMOS meets the functional limitations in the claims. Docket No. 294 at 1–8. UltimatePointer claims its contentions do not need to identify how the accused CMOS meets the functional limitations in the construction of "image sensor." *Id.* According to UltimatePointer, the accused CMOS qualifies as an "image sensor" under the Court's claim construction even if it does not actually "measure[] the intensity of reflected light from an image," so long as it is merely capable of doing so. *Id.* at 5–8 (citing *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325 (Fed. Cir. 2010)). Therefore, UltimatePointer contends it does not need to disclose how the CMOS "measures the intensity of reflected light from an image." *Id.* at 8.

In this case, the Court used obligatory language to construe how "image sensor" functions. It construed "image sensor" as "a device that measures the intensity of reflected light from an image." Docket No. 268 at 28. Therefore, an "image sensor" must actually "measure[] the intensity of reflected light from an image"—not merely be capable of doing so. *Cf. Enzo Biochem*, 599 F.3d at 1342 (holding that the accused product would qualify as a claimed "non-radioactive moiety" even if it were merely capable of being detected with a certain complex because the court construed "non-radioactive moiety" as one that "*can* be detected" with the certain complex). Thus, UltimatePointer must disclose how an image sensor meets the Court's claim construction.

UltimatePointer's infringement contentions for claim 1 of the '729 Patent are representative of the infringement contentions at issue. Those infringement contentions recite

the "image sensor" is "a CCD or CMOS image sensor" that "is sensitive to the [infrared] light sources emitted by the sensor bar . . . ." Docket No. 294, Ex. 2–I, Claim Chart for '729 Patent at 3–4. They do not provide Defendants with adequate notice of how the "image sensor" "measures the intensity of reflected light from an image," as the construed claims require. Therefore, they do not satisfy the requirements of P.R. 3-1. Accordingly, UltimatePointer **SHALL** amend its infringement contentions for claims requiring an "image sensor" and describe how the CCD or CMOS image sensor in the accused device "measures the intensity of reflected light from an image" by **December 13, 2013**.

***"Coupled to" contentions under the doctrine of equivalents***

Defendants argue UltimatePointer lacks good cause to add a new doctrine of equivalents theory for the claims containing the "coupled to" limitation. Docket No. 288 at 9–10. UltimatePointer claims it added this doctrine of equivalents contention in case the Court's claim construction of "coupled to" does not literally encompass wireless connections. Docket No. 294 at 9. UltimatePointer offered to withdraw its doctrine of equivalents contention if the Court clarified that "coupled to" includes wireless connections. Docket No. 305 at 4.

As Defendants' brief concedes, the Court's claim construction of "coupled to" is possible with or without a wire. Docket No. 288 at 10 ("The Court sided with Plaintiff, concluding that a connection is possible 'with or without a wire.'") (internal citations omitted) (quoting Docket No. 268 at 29). Therefore, the term "coupled to" includes wireless connections. After the Court clarified this at the November 14, 2013 hearing, UltimatePointer **WITHDREW** its doctrine of equivalents theory for the term "coupled to."

***Contentions for claims requiring software instructions***

Defendants also argue UltimatePointer's contentions for claims requiring software instructions are inadequate under P.R. 3-1 because they do not contain pinpoint citations to source code. Docket No. 288 at 10–14. At the November 14, 2013 hearing, UltimatePointer agreed to provide that source code. Accordingly, UltimatePointer **SHALL** amend its infringement contentions for claims requiring software instructions to include pinpoint citations to source code by **December 13, 2013**.

## NINTENDO'S MOTION TO COMPEL A COMPLETE RESPONSE TO INDIVIDUAL INTERROGATORY NO. 1

Nintendo requests the Court to compel UltimatePointer's complete response to Interrogatory No. 1 for each of the 200 products that are accused in UltimatePointer's third amended infringement contentions. Docket No. 289 at 7. Interrogatory No. 1 asks UltimatePointer to provide the dates it first learned of and acquired each accused product.[4]

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 26(b), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." UltimatePointer contends that the dates at issue are privileged attorney work product and also that they are not relevant.

The work product doctrine has been codified as Federal Rule of Civil Procedure 26(b)(3). Generally, materials prepared in anticipation of litigation by attorneys are discoverable only upon a showing of "substantial need" and "undue hardship." FED. R. CIV. P. 26(b)(3). However,

[4] Interrogatory No. 1, served June 20, 2013, reads: "For each Accused Product in the table below, identify (i) the date You first learned of the product, and (ii) the date You first acquired and/or purchased the product." Docket No. 289, Ex. A, UltimatePointer, LLC's Answers and Objections to Defendants Nintendo Co., Ltd. and Nintendo of America, Inc.'s First Set of Interrogatories to Plaintiff UltimatePointer, LLC (Nos. 1–3) at 4.

"mental impressions, conclusions, opinions, or legal theories of an attorney" are absolutely privileged and are not discoverable. *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999) ("'An attorney's thoughts [are] inviolate . . . .' Even though an attorney's mental impressions and opinions fall outside of the attorney-client privilege, they also 'fall[] outside the arena of discovery [as their disclosure would] contravene[] the public policy underlying the orderly prosecution and defense of legal claims.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

Courts have traditionally construed relevance broadly. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). Evidence is relevant if it "encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). Thus, discoverable evidence is not limited to admissible evidence. Evidence is relevant and discoverable if is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b).

**ANALYSIS**

UltimatePointer argues the dates it first learned of and acquired each accused product are protected attorney work product. Docket No. 303 at 2–4. According to UltimatePointer, these dates reveal the relative significance of particular products and the order in which UltimatePointer analyzed particular infringement issues. *Id.* at 3. Thus, UltimatePointer argues, these dates reveal the litigation strategies and thought processes of its counsel. *Id.*

At the November 14, 2013 hearing, Nintendo informed the Court that it had previously offered a compromise to UltimatePointer—that it may answer Interrogatory No. 1 without specifying which accused product each set of dates is associated with. The Court believes

Nintendo's proposed compromise conceals the relative significance of particular products and the order in which UltimatePointer analyzed particular infringement issues. Thus, this compromise cures UltimatePointer's concern that the dates it first learned of and acquired each accused product reveal the litigation strategies and thought processes of its counsel. Therefore, if presented in this manner, these dates are not protected attorney work product.

UltimatePointer further argues these dates are not yet relevant to Nintendo's claim that this is an exceptional case under 35 U.S.C. § 285. *Id.* at 7–8. According to UltimatePointer, discovery of its pre-suit investigation is premature until a Rule 11 motion is filed. *Id.* at 8 (citing *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-cv-248, Docket No. 290 (E.D. Tex. 2013)). However, Nintendo has already raised a § 285 claim and needs to take discovery for this claim. *See TQP*, No. 2:11-cv-248, Docket No. 290 (A challenge justifying discovery of a plaintiff's pre-suit investigation "would occur if a Rule 11 motion is filed and heard, *a claim is made under § 285*, or the like.") (emphasis added). Therefore, the dates UltimatePointer first learned of and acquired each accused product are currently relevant to Nintendo's claim that this is an exceptional case under 35 U.S.C. § 285.

Accordingly, UltimatePointer **SHALL** answer Interrogatory No. 1 without specifying which accused product each set of dates is associated with.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** Defendants' Motion to Strike P.R. 3-1 Infringement Contentions. UltimatePointer **SHALL** amend its infringement contentions for claims requiring an "image sensor" in order to describe how the CCD or CMOS image sensor in the accused device "measures the intensity of reflected light from an image" by **December 13, 2013**. UltimatePointer **SHALL** further amend its infringement contentions for

claims requiring software instructions to include pinpoint citations to source code by **December 13, 2013**.

The Court also **GRANTS IN PART** Nintendo's Motion to Compel a Complete Response to Individual Interrogatory No. 1. UltimatePointer **SHALL** answer Interrogatory No. 1 without specifying which accused product each set of dates is associated with.

**So ORDERED and SIGNED this 3rd day of December, 2013.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**