THE HONORABLE ROBERT S. LASNIK

UNITED STATE DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ULTIMATEPOINTER, L.L.C., | CIVIL ACTION NO. 2:14-cv-00865-RSL |
| Plaintiff, | **PLAINTIFF'S MOTION FOR** |
| vs. | **SUMMARY JUDGMENT** |
| NINTENDO CO., LTD. and NINTENDO OF AMERICA, INC., | |
| Defendants. | NOTE ON MOTION CALENDAR: September 26, 2014 |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -i-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................... 1

III.   ARGUMENT AND AUTHORITIES IN SUPPORT ......................................................... 2

       A.     Summary Judgment Standards.................................................................... 2

       B.     Summary Judgment on Various Invalidity Defenses is Appropriate...................... 2

              1.     Legal Standard for Invalidity ...................................................... 3

              2.     The Asserted Claims are Not Anticipated by Five Prior Art
                     References................................................................................ 3

                     a)     Legal Standard for Anticipation...................................... 3

                     b)     Defendants Admit that Five Prior Art References Lack
                            Certain Claim Limitations and thus Cannot Anticipate the
                            Asserted Claims ............................................................ 3

              3.     The Asserted Claims are Not Rendered Obvious By the Asserted
                     Prior Art References ............................................................... 6

                     a)     Legal Standard for Obviousness ..................................... 6

                     b)     Eight Prior Art References Standing Alone and Three
                            Combinations of References Do Not Render Any of the
                            Asserted Claims Obvious................................................. 6

              4.     The Asserted Claims are Not Indefinite...................................... 7

                     a)     Legal Standard for Indefiniteness ................................... 7

                     b)     Apparatus Claims 1, 3, 5, and 6 of the '729 Patent Do Not
                            Include Method Steps and Are Therefore Definite.................... 8

              5.     The Asserted Claims are Enabled ............................................. 9

                     a)     Legal Standard for Enablement .................................... 9

                     b)     The Asserted Claims Are Enabled................................... 11

                            i.     Defendants do not even attempt to present evidence
                                   in support some of their Enablement-based
                                   invalidity contentions........................................... 12

                            ii.    Evidence presented in supported of Defendants'
                                   remaining Enablement-based invalidity contentions
                                   does not raise a genuine issue of material fact.................. 12

                                   1.     Defendants rely upon an improper
                                          construction of the claim language ..................... 13

                                   2.     Defendants rely upon an unsupported legal
                                          theory ................................................... 17

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL                                  -ii-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

           3.     Defendants' Expert Opinions on Undue
Experimentation are Merely Conclusory ............. 19

C.    Summary Judgment on Defendants' Equitable Defenses is Appropriate ............ 21

    1.    Summary Judgment on Defendants' Equitable Estoppel Defense is
Appropriate ....................................................... 21

        a)    Legal Standard for Equitable Estoppel ......................... 21

        b)    UltimatePointer Did Not Communicate That It Would Not
Assert the '321 Patent .................................. 22

        c)    There is No Evidence That Defendants Relied on Alleged
Misleading Communications ........................................ 23

        d)    Defendants Would Not Be Materially Prejudiced by
UltimatePointer's Assertion of its Patent..................... 24

    2.    Summary Judgment on Defendants' Laches Defense is
Appropriate ....................................................... 25

        a)    Legal Standard for Laches Defense .............................. 25

        b)    UltimatePointer Did Not Delay in Filing Suit nor were
Defendants Prejudiced ......................................... 25

    3.    Summary Judgment on Defendants' Unclean Hands Defense is
Appropriate ....................................................... 26

        a)    Legal Standard for Unclean Hands Defense................................. 26

        b)    Plaintiff Has Not Engaged in Egregious Conduct ...................... 27

        c)    The Alleged Egregious Conduct Does Not Have a Causal
Connection to the Matters Before the Court for Resolution ........ 28

    4.    Summary Judgment on Defendants' Waiver Defense is
Appropriate ....................................................... 29

        a)    Legal Standard for Waiver Defense.............................. 29

        b)    Defendants Have No Evidence that Dr. Banning Intended
to Relinquish His Rights or that His Conduct was
Inconsistent with an Intent to Enforce His Rights ....................... 29

IV.    CONCLUSION............................................................... 30

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL             -iii-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (in banc)................................................................................ 21, 22, 24, 25, 26

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062 (Fed. Cir. 1995)................. 22, 24

*Alcon Research Ltd. v. Barr Laboratories, Inc.*, 745 F.3d 1180 (Fed. Cir. 2014)....................... 10

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007) ............... 7

*Amtel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374 (Fed. Cir. 1999)................................. 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ........................................................ 2

*Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563 (Fed. Cir. 1996)................................................................................................. 3

*Automotive Techs. Intern., Inc. v. BMW of North America, Inc.*, 501 F.3d 1274 (Fed. Cir. 2007) .................................................................................................. 17, 18, 19

*Bancorp Servs.,L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004) ........................ 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ..................................................................... 2

*Cephalon, Inc. v. Watson Pharm.*, Inc., 707 F.3d 1330 (Fed. Cir. 2013) .................................... 12

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004) ............................................... 11

*CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356 (Fed. Cir. 2007)................................... 15, 17

*Elcommerce.com, Inc. v. SAP AG*, 564 Fed. Appx. 599 (Fed. Cir. 2014) .................................... 9

*Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490 (Fed. Cir. 2014)................................................ 9

*Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357 (Fed. Cir. 2006)........................................... 10, 11

*Friskit, Inc. v. RealNetworks, Inc.*, C 03-05085 WWS, 2007 WL 776328 (N.D. Cal. Mar. 12, 2007) ...................................................................................................... 11

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) .......................................................................... 6

*Heckler v. Community Health Svcs.*, 467 U.S. 51, 59, 104 S.Ct. 2218 L.Ed.2d 42 (1984)................................................................................................................. 22

*In re Gabapentin Patent Litigation*, 648 F.Supp.2d 641 (D. N.J. 2009) ..................................... 26

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                              -iv-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

*In re Katz Interactive Call Processing Patent Litig.*, Nos. MDL 2:07-ML-1816-C-RGK (FFMx), CV-07-4964-RGK (FFMx), 2010 WL 8759119, at *15 (C.D. Cal. Dec. 3, 2010) ............................................................................................................ 29

*In re New Valley Corp.*, 181 F.3d 517 (3d Cir. 1999) ........................................... 26, 28

*In re Pelz*, 379 F. App'x 975 (Fed. Cir. 2010) ............................................................ 15

*In Re Wands*, 858 F.3d 731(Fed. Cir. 1988) ...................................................... 10, 20

*Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052(Fed. Cir. 2005) ................ 10, 11

*Jamesbury Corp. v. Litton Indus. Prods.*, 839 F.2d 1544 (Fed. Cir. 1988) .................................. 21

*Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240* (1933) ............................................. 26

*KSR Int'l Co. v. Teleflex Inc.,* 127 S.Ct. 1727 (2007) ............................................................ 6

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007) .......................... 17, 18, 19

*Lizardtech Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005) .................... 11

*MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012)... 17, 18, 19

*Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) ...................... 2

*Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003) ................................................................................................................... 3

*Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 n.8 (Fed. Cir. 1986) ............................ 15

*Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309 (Fed. Cir. 2006)............... 10

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978(Fed. Cir. 2006) ...................... 6

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008) .................................... 29, 30

*SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278(Fed. Cir. 2005)................................. 15

*Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352 (Fed. Cir. 2008) .................... 26, 28

*Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008)............................................ 17, 18, 19

*SynQor, Inc. v. Artesyn Techs. Inc.*, 2010 U.S. Dist. LEXIS 74808, at *97 (E.D. Tex. July 26, 2010) ............................................................................................................... 8

*SynQor, Inc. v. Artesyn Techs. Inc.*, 709 F.3d 1365 (Fed. Cir. 2013)............................................ 8

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363 (Fed. Cir. 2013)..................... 10

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                                    -v-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044 (Fed. Cir. 1988) .......................................... 3

*Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628 (Fed. Cir. 1987) .......................... 3

*Wanlass v. General Electric Co.*, 148 F.3d 1334 (Fed. Cir. 1998) ................................................. 25

*Warner-Lambert Co. v. Teva Pharm. USA*, 418 F.3d 1326 (Fed. Cir. 2005) ................... 10, 11, 20

*William Whitman Co. v. Universal Oil Products Co.*, 125 F.Supp. 137 (D. Del. 1954) .............. 26

**Statutes**

35 U.S.C. § 102 ................................................................................................................. 3, 6

35 U.S.C. § 103 ................................................................................................................. 6, 7

35 U.S.C. § 112 ................................................................................... 1, 7, 8, 10, 17

**Rules**

FED. R. CIV. P. 56 (c) ......................................................................................................... 2

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

## I.      INTRODUCTION

In this patent infringement case, Plaintiff UltimatePointer, L.L.C. ("UltimatePointer" or "Plaintiff") files this motion seeking summary judgment on certain invalidity and equitable defenses presented by Defendants Nintendo Co., Ltd and Nintendo of America, Inc. (collectively "Nintendo" or "Defendants").

## II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Is there a genuine issue of material fact that precludes a determination that claim 12 of the U.S. Patent No. 7,746,321 ("the '321 patent") and claims 1, 3, 5, 6, and 12 of the U.S. Patent No. 8,049,729 ("the '729 patent") (collectively "the asserted claims") are not anticipated by five prior art patents or publications[1]?

2. Is there a genuine issue of material fact that precludes a determination that the asserted claims are not obvious?

3. Is there a genuine issue of material fact that precludes a determination that claims 1, 3, 5, and 6 of the '729 patent are not indefinite?

4. Is there a genuine issue of material fact that precludes a determination that claims 1, 3, 4, 5, and 12 of the '729 patent are enabled by the specification as required by 35 U.S.C. § 112?

5. Is there a genuine issue of material fact that precludes a determination that UltimatePointer is not barred from asserting either the '321 patent or the '729 patent

---

[1] The five prior art references referred to in this motion with regards to Defendants anticipation defense are U.S. Patent No. 5,929,444 (hereinafter "Leichner"), U.S. Patent No. 6,852,032 (hereinafter "Ishino"), Japanese Patent Application Pub. No. 2002-91692 (hereinafter "Sato"), U.S. Patent No. 4,619,616 (hereinafter "Clarke"), and Japanese Patent Application Pub. No. H08-71252 (hereinafter "Sanbe").

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

("the patents-in-suit") against Defendants based on the doctrines of equitable estoppel, laches, unclean hands, and/or waiver?

## III.   ARGUMENT AND AUTHORITIES IN SUPPORT

### A.   Summary Judgment Standards

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In assessing summary judgment proof, the court views the evidence in the light most favorable to the non-movant. *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If the burden of proof at trial is on the non-moving party, summary judgment may be obtained through the demonstration of the lack of evidence to support an essential element of the claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has done so, the non-moving party must demonstrate specific facts showing that there is no genuine issue of material fact for trial. *Id*. at 324.

### B.   Summary Judgment on Various Invalidity Defenses is Appropriate

Defendants contend that the asserted claims of the patents-in-suit are invalid for a variety of reasons. *See* Ex. A, Def's Am. Invalidity Cont. at 4, 53, 96-99. However, there are no genuine issues of material fact that preclude a determination that 1) the asserted claims are not anticipated by five prior art references; 2) the asserted claims are not obvious; 3) claims 1, 3, 5, and 6 of the '729 patent are not indefinite; or 4) claims 1, 3, 4, 5, and 12 of the '729 patent are enabled. Therefore, summary judgment is appropriate.

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

### 1.      *Legal Standard for Invalidity*

For a patent claim to be held invalid, an accused infringer must prove with clear and convincing evidence that the given claim fails to comport with the statutory requirements for patentablity. *See Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050 (Fed. Cir. 1988). A patentee is entitled to a presumption that each patent claim is valid on the basis that the United States Patent and Trademark Office is presumed to have done its job correctly. *See Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996).

### 2.      *The Asserted Claims are Not Anticipated by Five Prior Art References*

#### a)      *Legal Standard for Anticipation*

Anticipation is a question of fact, which must be proven with clear and convincing evidence. *Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1220 (Fed. Cir. 2003). To anticipate and thereby invalidate a patent claim under 35 U.S.C. § 102, a prior art reference (e.g. patent or printed publication) must disclose each of the limitations recited in the claim. *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987).

#### b)      *Defendants Admit that Five Prior Art References Lack Certain Claim Limitations and thus Cannot Anticipate the Asserted Claims*

Defendants allege that all of the asserted claims are invalid as anticipated by various prior art references. Ex. A, Def's Am. Invalidity Cont., at 4, 52. To support these allegations, Defendants' expert, Dr. Welch, opines in his report that eight prior art references anticipate various claims of the '321 and '729 patents. Ex. B, Welch Report at 48-50, ¶ 115. However, as detailed below, Dr. Welch's expert report states that, applying the Court's claim construction,

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -3-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

five of his eight prior art references **lack** one or more of the claimed limitations.[2] As a convenience for the Court, the patent claims asserted by Dr. Welch to be anticipated, along with the elements he admits are missing from the prior art references, are shown in the table of Exhibit C. However, in more detail:

<u>Leichner:</u> Dr. Welch opines that Leichner does not disclose a direct pointing device which is required by the Court's construction for all of the asserted claims. Ex. B, Welch Report at 73-74, 77; ¶¶ 162-63, 178.  Dr. Welch also opines that Leichner does not disclose using a first angle between a pointing line and a first line which is required by the Court's construction of claim 12 of the '321 patent. *Id*. at 74; ¶ 164.  Dr. Welch further states that Leichner does not disclose an image sensor or measuring the intensity of reflected light, limitations required by the Court's construction of claims 1, 3, 5, 6 and 12 of '729 patent. *Id*. at 76-77; ¶¶ 177, 180.  Finally, Dr. Welch opines that Leichner does not use calibration points which is required by the Court's construction of claims 1, 3, 5, 6 and 12 of '729 patent.  *Id*. at 77; ¶ 179.

<u>Ishino:</u> Dr. Welch opines that Ishino teaches changing the "perspective of back-ground reality space of the [video] game." *Id*. at 68-69; ¶ 152. However, as acknowledged by Dr. Welch, the Court's construction for all of the asserted claims requires either: controlling a cursor on an image; or controlling a feature on the image. *Id*. at 16, 18-19; ¶¶ 48, 51. Yet, Dr. Welch does not opine—nor would it be consistent with the Court's construction—that changing the perspective of a background reality space of a video game corresponds to controlling a cursor or a feature on an image.

---

[2] In his deposition, Dr. Welch confirmed that these pieces of prior art lack one or more claim limitation.  *See* Ex. Q, Excerpts of Welch Depo. at 72:11-16, 78:25-79:5, 82:21-23, 90:15-19, 100:15-17, 163:1-3, 168:22-169:5, 170:6-12, 192:12-21.

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

<u>Sato:</u> Dr. Welch opines that Sato does not disclose a direct pointing device which is required by the Court's construction of claim 12 of the '321 patent. *Id.* at 75; ¶ 168.

<u>Clarke:</u> Dr. Welch opines that Clarke does not generate orientation data which is required by the Court's construction of claims 3, 6, and 12 of the '729 patent. *Id.* at 77-78; ¶ 182.

<u>Sanbe:</u> Dr. Welch opines that Sanbe does not disclose measuring the intensity of reflected light, and thus, does not disclose the claimed "image sensor" as required by the Court's construction of claims 1, 3, 5, 6 and 12 of '729 patent. *Id.* at 79; ¶ 189.

Thus, in the case of the five prior art references discussed above, Dr. Welch admits that, using the Court's claim construction in his invalidity analysis, these references do not disclose required claim elements. Lacking claim elements, those prior art reference cannot anticipate. Yet, Dr. Welch nevertheless concluded that those references "anticipate" based on his unspecified interpretation of Plaintiff's infringement contentions, as opposed to using the Court's claim construction.

Plaintiff can only prove infringement using the Court's claim construction. As for invalidity, as admitted by Defendants' expert, Dr. Welch, Defendants do not have evidence that five of the asserted prior art references anticipate when applying <u>the Court's</u> claim construction. Of course, Defendants must use the Court's claim construction in attacking the validity of the asserted claims, not some unspecified notion or theory as to what Defendants assert is the implication of Plaintiff's infringement contentions. Based on Dr. Welch's own admissions that these references lack certain claimed elements, these five references cannot anticipate and invalidate the asserted claims of the '321 and '729 patents.

There is no other evidence that these five references anticipate the asserted claims. Thus, there is no genuine issue of material fact as to whether these claims are anticipated by these five

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -5-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

references. Accordingly, Plaintiff is entitled to a summary judgment that claim 12 of the '321 patent and claims 1, 3, 5, 6, and 12 of the '729 patent are not anticipated by these five references under 35 U.S.C. § 102.

### 3. The Asserted Claims are Not Rendered Obvious By the Asserted Prior Art References

#### a) Legal Standard for Obviousness

Obviousness is governed by 35 U.S.C. § 103, which forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.,* 127 S.Ct. 1727, 1734 (2007). Whether a patent is invalid for obviousness is a question of law that is based on underlying factual findings. *Optivus Tech., Inc. v. Ion Beam Applications S.A.,* 469 F.3d 978, 984-85 (Fed. Cir. 2006). To determine whether a patent is invalid under § 103, the Court must consider the scope and content of the prior art, the differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and objective indicia of nonobviousness, such as commercial success, long-felt but unmet need, and copying by competitors. *KSR,* 127 S. Ct. at 1734 (quoting *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966)).

#### b) Eight Prior Art References Standing Alone and Three Combinations of References Do Not Render Any of the Asserted Claims Obvious

Defendants have alleged that all of the asserted claims are invalid as obvious in view of various prior art references. Ex. A, Def's Am. Invalidity Cont. at 42, 91. To support these allegations, Defendants have only proffered the opinion of Dr. Welch. Ex. B, Welch Report at

50-51; ¶ 116. As detailed below, the only evidence of obviousness comes from inappropriate, unsupported, and merely conclusory expert testimony of Dr. Welch.

Plaintiff's concurrently-filed Daubert motion as to Dr. Welch sets out why he should be precluded from presenting testimony as to his unsupported and conclusory theories of obviousness under § 103, at least in part due to his failure to adhere to the required *Graham* obviousness test. The jury should not be tainted with unsupported, conclusory opinions that were not derived from applying the appropriate test. Without such testimony, Defendants have no evidence that the eight prior art references, standing alone, or the three asserted prior art combinations, render any of the asserted claims obvious. Thus, there is no genuine issue of material fact as to whether the asserted claims are obvious in view of these eight prior art references and three combinations. Accordingly, Plaintiff is entitled to a summary judgment that the asserted claims are not obvious under 35 U.S.C. § 103.

### 4. The Asserted Claims are Not Indefinite

#### a) Legal Standard for Indefiniteness

A patent specification must include "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. Claim definiteness is a question of law. *Amtel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378 (Fed. Cir. 1999). To decide the issue, "a court must determine whether one skilled in the art would understand what is claimed when the claim is read in light of the specification." *Bancorp Servs.,L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004). The test for definiteness turns on what a person of ordinary skill in the art would understand the claims to require, not on what an expert himself understands the claim to mean. *See AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007).

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

b)    *Apparatus Claims 1, 3, 5, and 6 of the '729 Patent Do Not Include Method Steps and Are Therefore Definite*

Defendants have alleged that claims 1, 3, 5, and 6 of the '729 patent are invalid as indefinite for including method steps in an apparatus claim. Ex. A, Def's Am. Invalidity Cont. at 98. These four apparatus claims all require a device having a "sensor generating data." Ex. D, '729 patent at col. 33, l. 62- col. 34, l. 38.  In each claim, the sensor is a structure defined in part according to its function of generating particular data.  *Id*.  As previously recognized by the Court, a claim is sufficiently definite where the functional language of the claim describes the structure and capabilities of the claimed apparatus. Dkt. No. 268 at 32 (citing *SynQor, Inc. v. Artesyn Techs. Inc.*, 2010 U.S. Dist. LEXIS 74808, at *97 (E.D. Tex. July 26, 2010), *aff'd SynQor, Inc. v. Artesyn Techs. Inc.*, 709 F.3d 1365 (Fed. Cir. 2013)). In deciding Defendants' earlier motion for summary judgment alleging indefiniteness, the Court concluded that very similar claim elements (*e.g.*, "a processor using data," "a sensing device for generating … data," and "a user input device to indicate that said enclosure is being directed towards…") were all structures defined by their function, did not recite method steps, and thus were sufficiently definite under § 112. Dkt. No. 268 at 33-34.  Here, the "sensor generating data" claims now under attack, should similarly be determined definite. That is, contrary to Defendants' assertion, claims 1, 3, 5, and 6 of the '729 patent do not require performing a method using the claimed device.

No genuine issue of material fact exists that precludes summary judgment in Plaintiff's favor. Plaintiff's expert, Dr. Hooper, applying the proper test, has opined that one of ordinary skill in the art would understand a "sensor generating data" to be a structural limitation defining a function of the element, not a method step. Ex. E, Hooper Rebuttal Report at 97. Defendants' expert, Dr. Welch, does not address how one of ordinary skill in the art would understand the

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

claim and instead opines only that *"[i]n my opinion* these claims are indefinite as mixed method-apparatus claims." Ex. B, Welch Report at 87; ¶ 210 (emphasis added). Dr. Welch provides no opinion that one of ordinary skill in the art would read the claims in the way that he suggests, and he provides no other evidence to contradict Dr. Hooper. Further, regardless of what Dr. Welch said in his deposition taken seven weeks after he issued his expert report, Dr. Welch's report limits what he will be allowed to testify to at trial. Dr. Welch's report did not discuss how one of ordinary skill in the art would understand the claims; rather, the report only addressed how Dr. Welch himself reads the claims.

Recently, the Federal Circuit reversed a district court's summary judgment finding claims to be indefinite because the defendant had failed to put on evidence of how a person of ordinary skill in the art would understand the claims. *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 505-506  (Fed. Cir. 2014) (*vacated by Elcommerce.com, Inc. v. SAP AG*, 564 Fed. App'x. 599 (Fed. Cir. 2014) (vacating opinion based on the parties' joint motion to dismiss the appeal)). Relying solely on a legal argument is insufficient. Here, Defendant's expert Welch offers no evidence of what a person of ordinary skill in the art would understand. Thus, Dr. Welch's unsupported legal conclusion on claim definiteness does not raise a genuine issue of material fact. Accordingly, Plaintiff is entitled to a summary judgment as a matter of law rejecting the defense that apparatus claims 1, 3, 5, and 6 of the '729 patent are indefinite for allegedly including method steps.

### 5.    *The Asserted Claims are Enabled*

#### a)    *Legal Standard for Enablement*

A patent's specification must teach "the manner and process of making and using [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art

to which it pertains, or with which it is most clearly connected, to make and use the same . . ." 35 U.S.C. § 112, ¶ 1. According to the Federal Circuit, "[t]o prove that a claim is invalid for lack of enablement, a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation'." *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014) (quoting *In Re Wands*, 858 F.3d 731, 736-37 (Fed. Cir. 1988)).

Whether a patent's disclosure complies with the enablement requirement is a question of law subject to *de novo* review. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1070 (Fed. Cir. 2005). However, the enablement inquiry also involves underlying factual inquiries. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363, 1370 (Fed. Cir. 2013); *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006). The factual underpinnings in determining enablement are reviewed for sufficient evidence. *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1320 (Fed. Cir. 2006).

As mentioned above, in order to satisfy the "enablement" requirement, the specification must teach one of ordinary skill in the art how to make and use the invention without undue experimentation. *Warner-Lambert Co. v. Teva Pharm. USA*, 418 F.3d 1326, 1337 (Fed. Cir. 2005). In determining whether a given amount of experimentation is "undue," the Federal Circuit has cited the following eight factors: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -10-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

The Federal Circuit has also emphasized that in satisfying the enablement requirement, the specification need not disclose what is well known in the art. *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1365 (Fed. Cir. 2006); *Invitrogen Corp.*, 429 F.3d at 1070-71. In other words, "the specification need only teach those aspects of the invention that one skilled in the art could not figure out without undue experimentation." *Warner-Lambert*, 418 F.3d at 1337.

Further, the specification must enable the full scope of the invention. *Lizardtech Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005). In other words, with respect to claim breadth, the only relevant concern should be whether the scope of enablement provided to one skilled in the art by the disclosure is commensurate with the scope of protection sought by the claims. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004). However, the Federal Circuit has stressed that "[e]nablement does not require the inventor to foresee every means of implementing an invention at pains of losing the patent franchise." *Invitrogen Corp.*, 429 F.3d at 1071; *see also Friskit, Inc. v. RealNetworks, Inc.*, C 03-05085 WWS, 2007 WL 776328 (N.D. Cal. Mar. 12, 2007) (citing *Invitrogen Corp.*, 429 F.3d at 1070-71).

### b)   The Asserted Claims Are Enabled

Defendants have alleged that claims 1, 3, 5, 6, and 12 of the '729 patent are invalid for failing the enablement requirement. Ex. A, Def's Am. Invalidity Cont.at 97-98. To support these allegations, Defendants have only proffered the opinion of Dr. Gregory Welch. Ex. B, Welch Report at 84-86; ¶¶ 204-208. However, as detailed below, Dr. Welch's report fails to provide any opinions as to some of the enablement-based invalidity contentions. *Id*. In addition, the opinions that Dr. Welch's does express relating to a lack of enablement for claims 1, 3, 5, 6, and 12 of the '729 Patent are insufficient to raise a genuine issue of material fact because: they rely upon an

improper construction of the claims, they rely on a legal theory of enablement that is inconsistent with established case law, and they are merely conclusory in nature. *Id.*

> i.   *Defendants do not even attempt to present evidence in support some of their Enablement-based invalidity contentions*

Defendants alleged that claims 5, 6, and 12 of the '729 patent are invalid for failing the enablement requirement. Ex. A, Defs' Am. Invalidity Cont., at 97-98. In particular, Defendants contended that the '729 patent specification fails to enable the claimed "image sensor generating data including data of the calibration points," of claims 5 and 6 and "generating data including data of the calibration points," of claim 12. *Id.* It is the Defendants' burden to prove these allegations by clear and convincing evidence. *Cephalon, Inc. v. Watson Pharm.*, Inc., 707 F.3d 1330, 1336 (Fed. Cir. 2013). However, Defendants' expert, Welch, presented no opinions in his report relating to a lack of enablement of the '729 patent for claims 5, 6, and 12 with regard to these specific limitations. *See* Ex. B, Welch Report at 84-86; ¶¶ 204-208. Moreover, Defendants have no other evidence to support their contentions of invalidity of claims 5, 6, and 12 for lack of enablement with regard to these features. Thus, Defendants cannot raise a genuine issue of material fact for these allegations.

> ii.   *Evidence presented in supported of Defendants' remaining Enablement-based invalidity contentions does not raise a genuine issue of material fact*

In addition to the allegations discussed above, in their invalidity contentions Defendants also alleged that the specification of the '729 patent fails to enable:

- "programmed to use the distance between the first point and the second point to control the feature on the image," of claim 1;

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

- "wherein said processor is further programmed to use the generated data related to the orientation to control the feature on the image," of claim 3;

- "programmed to use said generated data including data of the calibration points to control the feature on the image," of claims 5;

- "controlling the feature on the image based on the generated data including data of the calibration points," and "controlling the feature on the image using the generated data related to the orientation," of claim 12.

Ex. A, Defs' Am. Invalidity Cont. at 97-98. However, as detailed below, there is no genuine issue of material fact with regard to these additional contentions since Defendants merely rely on an improper claim construction, an unsupported legal theory, and conclusory opinions offered by Defendants' expert.

### 1. Defendants rely upon an improper construction of the claim language

In his report, Dr. Welch submits that the claimed "processor … programmed to use the distance between the first point and the second point to control the feature on the image," of claim 1 of the '729 patent is not enabled because the specification does not disclose an "apparatus that controls a cursor using direct pointing using **only** distance." Ex. B, Welch Report at 85; ¶ 206 (emphasis added). In addition, Dr. Welch makes similar arguments in arguing that the claimed "processor … programmed to use said generated data including data of the calibration points to control the feature on the image," in claim 5 and the claimed "controlling the feature on the imaged based on the generated data including data of the calibration points," in claim 12 are also not enabled. *Id*. at 85-86, ¶ 207. Specifically, regarding these features of claims 5 and 12, Dr. Welch states that "[t]he specification … does not enable one of skill in the art to [control a feature on the image] if the **only** information available is data of the calibration points

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                                    -13-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

that are either above or below the image." *Id.* at 86, ¶ 207 (emphasis added). Further, Dr. Welch also argues that the additional features of dependent claims 3 and 6 (which depend from independent claims 1 and 5, respectively, do "not fix the enablement issues present in claims 1 and 5." *Id.* In particular, Dr. Welch states that the feature "wherein said processor is further programmed to use the generated data related to the orientation to control the feature on the image," in each of claims 3 and 6 is not enabled since "that information in conjunction with either distance (claim 1) or the data of the calibration points (claim 5) is not sufficient to perform direct pointing." *Id.*

In order to opine that the '729 patent specification lacks an enabling disclosure of the invention claimed, Dr. Welch adopts and relies on a novel claim construction (one that was not adopted in the Court's claim construction order or even asserted by Defendants in their briefing), namely, a construction which requires exclusivity for the recited features in performing the claimed functions. More specifically, Dr. Welch has re-defined the claimed inventions of claims 1, 3, 5, 6, and 12 of the '729 patent by: (1) re-defining claim 1 to require that the processor be-able to control the feature on the image using **only** distance; (2) re-defining claims 5 to require that the processor be able-to control the feature on the image using **only** the data of the calibration points; (3) re-defining claim 12 to require controlling the feature on the image using **only** on the data of the calibration points; and (4) re-defining claims 3 and 6 to require that the processor be able to control the feature on the image using **only** the combination of distance and orientation (e.g., claim 3) or the combination of data of the calibration points and orientation (e.g., claim 6). *See id.* at 84-86, ¶¶ 204-208. However, there is simply no basis for these new claim constructions. For example, the Claim Construction Order of May, 28, 2013 does not require or compel such a limited reading of claims 1, 3, 5, 6, and 12 of the '729 patent. *See* Dkt.

No. 268 at 13-15, 21-24, and 26- 28 (discussing various terms within the asserted claims of the '729 patent).

In addition, nothing expressly in the language of claims 1, 3, 5, and 12 of the '729 patent compels the exclusivity of the claimed features as argued by Dr. Welch. In particular, claims 1, 3, 5, 6 and 12 each include the open ended transition term "comprising." Ex. D, the '729 patent, col. 33, l. 62 – col. 34, l. 9; col. 34, ll. 27-38; col. 35, l. 23 – col. 36, l. 9. Similarly, claims 3 and 6 each use the transition phrase "including." *Id*. at col. 34, ll. 12-18 and 39-45. The term "comprising," has been interpreted by long held, black letter law to mean "including but not limited to." *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007); *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 n.8 (Fed. Cir. 1986). Similarly, the terms "includes" or "including" have also been recognized as carrying the same open ended meaning as the term "comprising." *See SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1284-85 (Fed. Cir. 2005) ("As a patent law term of art, 'includes' means 'comprising.'"); *See also In re Pelz*, 379 F. App'x 975, 978 (Fed. Cir. 2010) (citing *SanDisk* and recognizing the term "including" as open-ended in an asserted claim).

Thus, having each utilized open-ended transition phrases, the scope of claims 1, 3, 5, 6, and 12 of claims the '729 patent mean that they encompass devices that include the specifically-recited features, but the claimed invention is not limited to just those recited elements. In particular, the scope of claim 1 includes a processor that is programmed to use distance, but does not exclude using other factors or parameters to control a feature on an image. Similarly, the scope of claims 5 and 12 includes (1) a processor that is programmed to use data of the calibration points, but does not exclude using other factors or parameters to control a feature on an image; and (2) controlling features on an image based on data of the calibration points, but

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                          -15-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

does not exclude other factors or parameters, respectively. Likewise, the scopes of dependent claims 3 and 6 each include a processor that is programmed to use distance (or data of the calibration points) and orientation, but does not exclude using other parameters or factors to control a feature on an image.

Moreover, the specification of the '729 patent fully describes and discloses embodiments which comport with this proper scope of claims 1, 3, 5, 6, and 12. For example, the specification fully describes the structure and function of many embodiments which include processors that are programed to utilize distance as well as other factors (e.g., position, orientation, etc.) to control a feature on an image. *See* Ex. D, the '729 patent, col. 19, l. 27 – col. 20, l. 27 (disclosing embodiment that uses distance, orientation, and position to control a cursor); col. 20, l. 28 – col. 24, l. 57 (disclosing embodiment which needs only orientation to control a cursor and explaining that distance can be added for greater accuracy). The Expert Rebuttal Report of Dr. Richard Hooper also discusses the above-referenced disclosures appearing in the '729 patent and concludes that, contrary to Dr. Welch's opinions, the specification of the '729 patent does in fact teach one of ordinary skill how to control a feature on an image using distance, using orientation, and using data of the calibration points. Ex. E, Hooper Rebuttal Report at 92-96. Thus, these embodiments disclosed in the specification of the '729 patent adequately teach one of ordinary skill how to make and/or use the invention within a scope that is commensurate with the properly defined scope of claims 1, 3, 5, 6, and 12. Therefore, Dr. Welch first creates and relies on improper constructions of the relevant claim language, and then he tries to establish non-enablement of his newly-defined claim. Thus, for these reasons, Dr. Welch's arguments fail to raise a genuine issue of material fact on the question of enablement.

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

*2.   Defendants rely upon an unsupported legal theory*

Dr. Welch's entire opinion of non-enablement rests on the legal theory that when a claim recites specific elements or functions, even if in an open-ended fashion, then to comply with 35 U.S.C. § 112, the specification must enable the use of those recited elements or functions to the <u>exclusion</u> of all other elements or functions described in the specification. *See* Ex. B, Welch Report at 84-86; ¶¶ 204-208. In other words, Dr. Welch's non-enablement opinions rest on the fiction that to enable the "full scope" of the claim, the specification must provide disclosure as to how to make or use embodiments containing <u>only</u> the features that are specifically recited in the claim following the open ended transition. *See id*. However, this theory of enablement is not supported and ignores the long-standing law that permits the patentee to claim the invention in an open-ended, non-exclusionary manner. *See* e.g., *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) (explaining the term "comprising" in a patent claim means "including but not limited to").

The Federal Circuit has a decided several cases which have found a lack of enablement for the "full scope" of an asserted claim(s). *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007); *Automotive Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274 (Fed. Cir. 2007); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008); *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012). However, as will be described in more detail below, each of these cases is factually distinguishable from the case at bar.

First, in *Liebel-Flarsheim*, based at least in part on the patent's prosecution history, the asserted claims were construed to include an injection system both with and without a pressure jacket. *Liebel-Flarsheim Co.*, 481 F.3d at 1380. The Court held that because the specification taught away from an injector system without a pressure jacket, then the full scope of the claims

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL                              -17-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

were not enabled. *Id*. Thus, in *Liebel-Flarsheim*, the scope of the asserted claims included a specific feature that was not enabled (namely, a injector system without a pressure jacket). *Id*.

In *Automotive Techs*., the claims required a "means responsive to the motion of" a mass. *Automotive Techs*, 501 F.3d at 1277. During claim construction proceedings, the District Court held that that limitation included both mechanical means and electronic means. Id. at 1278-79. The Federal Circuit found that the specification did not sufficiently describe and thus did not enable the electronic means, and as a result, held that the full scope of the invention was not enabled. Id. at 1282-83. Therefore, like the Court *in Liebel-Flarsheim*, the Court in *Automotive Techs* found that the scope of the asserted claims affirmatively included a specific feature that was not enabled (namely an electronic means responsive to motion). *Id*.

In *Sitrick*, the asserted claims were construed to include both video games and movies. *Sitrick*, 516 F.3d at 999. However, the Court found that the specification of the patent-in-suit failed to enable one of ordinary skill in the art to utilize the claimed limitations in the context of movies. *Id.* at 1000-02. Thus again, the Court in *Sitrick* found that the scope of the asserted claims included a feature that was not enabled (namely, movies). *Id*.

In *MagSil*, the asserted claims broadly claimed a tri-layer tunnel junction device that, when a small amount of electromagnetic energy is applied to the junction, causes a change in resistance by at least 10%. *MagSil Corp., 687 F.3d at 1381*. The claims were construed to cover any resistance change above 10%, up to infinity. *Id*. The specification, however, taught that the inventors' efforts achieved a maximum resistance change of only 11.8%. *Id*. Thus, the Court found that specification failed to enable the broad range of values for the claimed resistance change, stating that that plaintiff "cannot claim an exclusive right to exclude later tri-layer tunnel junctions that greatly exceed a 10% resistive change." *Id*. at 1384. As a result, like each of the

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -18-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

other cases recited above, the Court in *MagSil* found that the scope of the asserted claims included a specific feature that was not enabled (namely, a resistance change greatly about 10%). *Id*. at 1381-1384.

Therefore, in each of these cases, the Federal Circuit found a lack of enablement of the "full scope" of an asserted claim when a feature that was affirmatively recited was construed to be a limitation of the asserted claim was not enabled by the specification. *See Liebel-Flarsheim Co.*, 481 F.3d at 1380; *Automotive Techs. Int'l, Inc.*, 501 F.3d at 1282-83; *Sitrick*, 516 F.3d 1000; *MagSil Corp.*, 687 F.3d at 1384. In contrast, Dr. Welch's report does not allege that any of the limitations recited or construed to be a limitation of the asserted claims of the '729 patent is not enabled by the specification. *See* Ex. B, Welch Report at 84-86; ¶¶ 204-208. Instead, Dr. Welch contends that to enable the "full scope" of the claims, the specification must not only enable each of the affirmatively recited claim features alone, but must also enable the use of those recited features to the exclusion of any others. *See id*. This additional requirement that expert Welch has grafted onto the enablement requirement is not endorsed in any of the above referenced cases (e.g., *Liebel-Flarsheim*, *Automotive Techs.*, *Sitrick*, and *MagSil*). Thus, the legal theory advanced by the Defendants, via Dr. Welch's report, to support their allegations that claims 1, 3, 5, 6, and 12 of the '729 patent fails the enablement requirement is not supported by established case law. Accordingly, these legal theories fail to present genuine issues of material fact.

### 3. Defendants' Expert Opinions on Undue Experimentation are Merely Conclusory

As previously mentioned, to prevail on the enablement defense, Defendants must prove by clear and convincing evidence that one of ordinary skill in the art would be required to engage in "undue experimentation" to practice the claimed invention. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). The *Wands* factors recited above must be considered in deciding the factual

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -19-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

inquiry of undue experimentation. *Id.*; *see also Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1337 (Fed. Cir. 2005).

In his report, Dr. Welch summarily concludes that the asserted claims of the '729 patent lack an enabling disclosure. Ex. B, Welch Report, at 84-86; ¶¶ 204-208. However, Dr. Welch provides no analysis of the *In re Wands* factors, or any other factors, nor does he provide any other reasoning why the specification would fail to teach those skilled in the art how to make and use the invention without undue experimentation.[3] Instead, Dr. Welch merely announces his conclusion that undue experimentation is required to practice the asserted claims. Ex. B, Welch Report at 84-86; ¶¶ 204-208. In addition, Dr. Welch bases his argument about enablement on some unknown and undisclosed "full scope of the claims" which he believes is "implied" from UltimatePointer's infringement contentions. *See id.* at 84; ¶ 204 ("the implied [claim] scope apparent [to him] from Ultimate Pointer's infringement contentions.").

Such unsupported conclusory opinions do not constitute clear and convincing evidence necessary to overcome the presumption that the '729 patent claims would not require undue experimentation. Thus, for these additional reasons, Defendants can offer no competent summary judgment evidence raising a genuine issue that claims 1, 3, 5, 6, and 12 of the '729 patent are allegedly not enabled.

---

[3] In the "Legal Standards" section of his report, Dr.Welch's report merely lists the *Wands* factors; however, his report provides absolutely no analysis of how those factors apply to the facts of this case. Ex. B, Welch Report at 14-15; ¶ 44.

### C.      Summary Judgment on Defendants' Equitable Defenses is Appropriate

Defendants assert that a variety of equitable defenses bar UltimatePointer's infringement claims. *See* Dkt. No. 197 at ¶ 69. However, there are no genuine issues of material fact that preclude summary judgment that each of these defenses is meritless.

#### 1.      *Summary Judgment on Defendants' Equitable Estoppel Defense is Appropriate*

##### a)      *Legal Standard for Equitable Estoppel*

Equitable estoppel is an affirmative defense addressed to the sound discretion of the trial court. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (in banc) *citing Jamesbury Corp. v. Litton Indus. Prods.*, 839 F.2d 1544, 1553 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988) (additional citations omitted). Where equitable estoppel is established, all relief on a claim may be barred. *Id.* Estoppel arises when (1) the patentee through words, conduct, or silence communicates in a misleading way to the alleged infringer that he will not assert infringement; (2) the alleged infringer relies on such communication; and (3) the alleged infringer would be materially harmed if the patentee is later permitted to assert its patent. *Id.* at 1041-43.

The first element of equitable estoppel concerns the statements or conduct of the patentee which must communicate, in a misleading way, that the accused infringer will not be disturbed by the patentee in the activities in which the former is engaged. *Id.* at 1042. The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer. *Id.* The alleged infringer must also know or reasonably be able to infer that the patentee has known of the alleged infringer's activities for some time. *Id.* The second element requires reliance on the misleading conduct by the alleged infringer. *Id.* at 1042 *citing Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218,

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

2223-24, 81 L.Ed.2d 42 (1984). The alleged infringer must show "a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead" with its allegedly infringing activity. *Id.* at 1043. The third element necessary to establish equitable estoppel requires that the accused infringer establish that it would be materially prejudiced if the patentee is now permitted to proceed. *Id*. The prejudice may arise from a change of economic position or loss of evidence. *Id*. This prejudice must also be causally connected to the patentee's misleading communication. *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995) (noting that capital investment is insufficient alone, with proof that "increased expenditures, i.e., on marketing and development, were in . . . related to actions taken by the patentee").

b)   *UltimatePointer Did Not Communicate That It Would Not Assert the '321 Patent*

None of Dr. Banning's communications were misleading. Specifically, UltimatePointer sent a letter to Defendants in December 2010 and told Defendants that UltimatePointer was willing to grant them a royalty-bearing license under the '321 patent. Ex. F, 12/10/10 Ltr. from G. Maag to Nintendo of Am.  However, there was no suggestion that Defendants could proceed to infringe the '321 patent <u>without</u> a license. *Id*. Nothing in this letter could be construed as a communication to Defendants that they would not be subject to infringement claims. In fact, Defendants understood as much and expressly rejected the opportunity to negotiate a license in their response to UltimatePointer's December 2010 letter. Ex. G, 3/3/11 Ltr. from D. Pritchard to G. Maag.

As noted in the December 2010 letter, Dr. Banning had also contacted Defendants as early as 2005 after filing his patent application that ultimately became the '321 patent. Ex. F, 12/10/10 Ltr. from G. Maag to Nintendo of Am. Those communications were similar in content

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL                    -22-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

to the December 2010 letter: Dr. Banning offered to enter licensing negotiations with Defendants for the technology that he had invented. Dr. Banning first contacted Defendants in 2005 via an email to Nintendo's Consumer Response Team noting an issue with Defendants' newly announced controller in that it required a sensor mounted adjacent to the user's television screen. Ex. H, 9/10/05 email from E. Banning to Nintendo. Dr. Banning further stated that his *patent-pending* technology could offer a solution to this issue and included a hyperlink to his website for further information, stating that he would like to hear if Defendants would like to pursue the idea given the Nintendo controller's limitations with respect to larger television screens. *Id.* Defendants responded stating that they were not interested in an investment opportunity in Dr. Banning's technology. Ex. I, 9/21/05 email from E. Banning to Nintendo. Just as in the December 2010 letter, Dr. Banning did not ever state or imply that Defendants would not be subject to infringement claims, and Defendants expressly rejected the opportunity to negotiate a license with Dr. Banning. Indeed, in Dr. Banning's communication to Nintendo's Consumer Servicing Team he explicitly noted that his technology was patent-pending. Ex. H, 9/10/05 email from E. Banning to Nintendo. Therefore, neither UltimatePointer nor Dr. Banning ever communicated in a misleading way to Defendants that infringement would not be asserted. Even viewing these communications in the light most favorable to Defendants, nothing in them could possibly lead Defendants and their lawyers to believe that Plaintiff or Dr. Banning would not enforce the patents-in-suit if/when the patents issued.

> c)     *There is No Evidence That Defendants Relied on Alleged Misleading Communications*

Defendants' communications to Dr. Banning only indicate that they were not interested in Dr. Banning's proposals, and in no way indicate reliance. For instance, in response to Dr. Banning's inquiry to Nintendo's Consumer Servicing Team, Defendants flatly declined any

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

proposals. Ex. I, 9/21/05 email from E. Banning to Nintendo. In response to Dr. Banning's email notifying Defendants of his published application, Nintendo's intellectual property in-house attorney replied "[w]e have reviewed your published patent application and we do not feel that any licensing discussions are necessary or appropriate at this time." Ex. J, 12/22/05 email from Ms. Blodgett-Ford to E. Banning. Thus, there is no evidence that Defendants relied in anyway on the communications from Dr. Banning. *See A.C. Aukerman Co.*, 960 F.2d at 1042.

d)    *Defendants Would Not Be Materially Prejudiced by UltimatePointer's Assertion of its Patent*

Finally, Defendants would not be materially prejudiced by UltimatePointer's assertion of its patent. There is no change of economic position or any loss of evidence based on Dr. Banning and UltimatePointer's communications with Defendants. In fact, Defendants have produced in this litigation all its communications with Dr. Banning and UltimatePointer that occurred prior to the filing of the lawsuit. Thus, no evidence was lost. Thus, there is no evidence that Defendants had any change of economic position based on Dr. Banning or UltimatePointer's communications.

Because there is no evidence that Defendants received any communication that implied that Dr. Banning or UltimatePointer would not assert infringement, that they relied on any communication with Dr. Banning or UltimatePointer, or that they would be materially prejudiced by UltimatePointer's assertion of its patent, UltimatePointer should not be barred by equitable estoppel. *See A.C. Aukerman Co.*, 960 F.2d at 1041.

Defendants also cannot show a causal connection between what they contend is any prejudice and what they contend is Plaintiff's misleading communication, as required to prove equitable estoppel. *ABB Robotics, Inc.*, 52 F.3d at 1065. Defendants have produced no evidence that any statements from Dr. Banning communicated to Defendants caused Defendants to

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -24-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

significantly expand their business for the manufacture and sale of the Wii and related items. Defendants had a full opportunity to investigate the patent application and later issued patent, mitigate damages, or modify the product after being provided a copy of the patent application and later issued patent. Defendants did not do so.

### 2.  Summary Judgment on Defendants' Laches Defense is Appropriate

#### a)  Legal Standard for Laches Defense

Laches arises when (1) the patent owner delays filing suit for an unreasonable period of time; and (2) the patent owner's unreasonable delay caused material prejudice to the infringer. *A.C. Aukerman Co.*, 960 F.2d at 1032. The period of delay is measured from the time the patent owner knew or, in the exercise of due diligence, should have known of the allegedly infringing activity to the date of suit. *E.g., Id. at 1033; Wanless v. General Electric Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998) ("The period of delay begins at the time the patentee has actual or constructive knowledge of the defendant's potentially infringing activities."). Thus, the period of delay cannot begin until the patent-in-suit has issued. *A.C. Aukerman Co.*, 960 F.2d at 1033 (noting that "the period does not begin prior to issuance of the patent").

#### b)  UltimatePointer Did Not Delay in Filing Suit nor were Defendants Prejudiced

The '321 patent issued on June 29, 2010. Ex. K, the '321 patent. Six months later, in December 2010, Plaintiff's counsel wrote to Defendants and explained that they were infringing the '321 patent, but that Plaintiff was willing to grant a royalty-bearing license under the '321 patent. Ex. F, 12/10/10 Ltr. from G. Maag to Nintendo of Am. Thus, Plaintiff knew of the alleged infringement by December 2010. In March 2011, Defendants responded to Plaintiff's letter explaining that Defendants, after reviewing the '321 patent, were simply not interested in a license. Ex. G, 3/3/11 Ltr. from D. Pritchard to G. Maag. UltimatePointer then filed the present

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -25-

lawsuit on September 15, 2011, approximately six months after receiving Defendants' letter declining a license, and less than 14 months after the issuance of the patent. *See* Dkt. No. 1 (11-cv-496 lawsuit).  Furthermore, UltimatePointer filed the second lawsuit that concerns the '729 patent on the very day that the patent issued. Dkt. No. 1 (11-cv-571 lawsuit); Ex. D, the '729 patent. Thus, there are no material facts that can support a finding that the filings of the present lawsuits were delayed for an unreasonable period of time. Likewise, there are no facts to support a finding that Defendants were materially prejudiced from any alleged delay.

### 3. *Summary Judgment on Defendants' Unclean Hands Defense is Appropriate*

#### a) *Legal Standard for Unclean Hands Defense*

To prevail on an unclean hands claim, Defendants must prove that Plaintiff "has 'engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor.'" *Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1361 (Fed. Cir. 2008) (citing *A.C. Aukerman*, 960 F.2d at 1038). Furthermore, "the primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, i.e., have a relationship, to the matters before the court for resolution." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (quoting *Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240*, 245-46 (1933)). Thus, the doctrine of unclean hands is "only available when the tainted transaction has an immediate and necessary relationship to the equity involved in the pending matter." *William Whitman Co. v. Universal Oil Prods. Co.*, 125 F. Supp. 137, 166 (D. Del. 1954). "In the context of patent litigation, assertions of unclean hands have typically succeeded only in situations in which the misconduct related in some way to the procurement of the particular patent in question." *In re Gabapentin Patent Litigation*, 648 F. Supp. 2d 641 (D. N.J. 2009) (citations omitted).

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

b)    *Plaintiff Has Not Engaged in Egregious Conduct*

There is no evidence or even an allegation by Defendants that any "egregious" conduct by Plaintiff related to the procurement of either of the patents-in-suit. Instead, Defendants contend that it was particularly egregious for Dr. Banning, after having purchased a Wii system, to state in a proposal for funding (the SMART Proposal) that "no product on today's market offers such 'direct-pointing functionality'" as the product he wanted to develop. Ex. L, Defs' Resp. to First Set of Common Rogs. at 7, 10; Ex. M, SMART Proj. Proposal at 4. There was nothing egregious about the statement.

The purpose of the SMART Proposal was to ask the Scottish government to provide funding for Dr. Banning to develop a commercial product. Ex. N, Excerpts of Banning Depo. at 215:2-14, 217:4-15, 273:9-22; Ex. M, SMART Proj. Proposal at 2. In the SMART Proposal, all references and comparisons are to Dr. Banning's proposed product, not to what was claimed in his patent application that had not evened issued as a patent yet. *See* Exhibit M, SMART Proj. Proposal. For example, just prior to the above-quoted statement upon which Defendants rely, Dr. Banning states, "[t]he Upoint project aims to design and construct . . . a pointing device that is best described as an interactive, or 'virtual laser'-pointer. That is, a Upoint handheld remote will allow a user to interact with objects on any type of computer display pointed at in a laser-like manner, from any position in the room." *Id*. at 4. Dr. Banning, then immediately makes the statement Defendants rely upon. *Id*. Thus, it is clear that Dr. Banning is stating that the Wii system is a system that does not provide the pointing capability he envisions for his commercial product.  He does **not** state that the Wii would not infringe any claim in a later issued patent.

Further, the time for asserting claims of inequitable conduct in the patents' procurement is well passed. *See* Dkt. No. 375. Regardless, what Defendants characterize on as "egregious"

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                -27-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

misconduct in no way relates to the lawsuit at all. In fact, the alleged "egregious" misconduct was only related to seeking assistance from the Scottish government for the development of Dr. Banning's commercial product. These activities have had no effect on Defendants and have no relationship to the equities involved between a patent owner and accused infringer. Thus, even considering as true the facts as alleged by Defendants, Defendants cannot prevail in an unclean hands defense. *See Serdarevic*, 532 F.3d at 1361.

c)    *The Alleged Egregious Conduct Does Not Have a Causal*
        *Connection to the Matters Before the Court for Resolution*

Defendants can provide no evidence or rationale as to how statements made by Dr. Banning in the SMART Proposal bear a causal connection to the patents at issue in this case. The Executive Summary of the SMART Proposal states explicitly that the project is "for the feasibility research and design of a so-called Upoint/PinPoint presentation control system" and that "[f]ollowing successful completion of the feasibility project, a production system will be developed which will enable commercialization of Upoint/PinPoint systems, and yield an estimated profit of 332 k£ after 3 years and 4,687 k£ after 6 years in a realistic sales scenario." Exhibit M, SMART Proj. Proposal at 2. Thus, its scope and purpose are entirely different from that of the patents-in-suit: there is no scenario in which the SMART Proposal could bear a causal connection to the patents-in-suit. Indeed, Dr. Banning refers to U.S. patent-pending technology in the "Deliverables" section of the SMART Proposal as relating to only a "second part" of the deliverables to be offered by the project, with the "first part" directed towards other deliverables unrelated to the patent-pending technology, such as an ergonomic remote, driver software, a design blueprint, and more. *Id.* at 5. Because the SMART Proposal, and Dr. Banning's statements made therein, do not have a causal connection to the patents-in-suit, Defendants cannot prevail in an unclean hands defense. *See In re New Valley Corp.*, 181 F.3d at 525.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL                                   -28-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

### 4.     Summary Judgment on Defendants' Waiver Defense is Appropriate

#### a)     Legal Standard for Waiver Defense

Waiver requires that: (1) the patentee, with full knowledge of the material facts, intentionally relinquished its rights to enforce his patents or (2) that his conduct was so inconsistent with an intent to enforce his rights as to induce a reasonable belief that such right has been relinquished. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

#### b)     Defendants Have No Evidence that Dr. Banning Intended to Relinquish His Rights or that His Conduct was Inconsistent with an Intent to Enforce His Rights

Defendants have no evidence that supports, much less proves, either element required for a defense of waiver. To the contrary, Dr. Banning repeatedly informed Defendants of his pending patent applications, and requested Defendants to review his patent in light of the Wii with knowledge that he was willing to grant a royalty-bearing license. *See* Ex. F, 12/10/10 Ltr. from G. Maag to Nintendo of Am.; Ex. H, 9/10/05 email from E. Banning to Nintendo; Ex. O, 10/11/05 email from E. Banning to S. Blodgett-Ford; Ex. P, 10/11/05 email from S. Blodgett-Ford to E. Banning. Indeed, District Courts in the Ninth Circuit have granted summary judgment on the affirmative defense of waiver in light of communications from the patentee to an accused infringer disclosing its patents and offering a license. *In re Katz Interactive Call Processing Patent Litig.*, Nos. MDL 2:07-ML-1816-C-RGK (FFMx), CV-07-4964-RGK (FFMx), 2010 WL 8759119, at *15 (C.D. Cal. Dec. 3, 2010).

Moreover, Defendants' pleadings and discovery responses do not explain how these defenses should apply separate from Defendants' estoppel and laches defenses. *See* Ex. L, Defs' Resp. to First Set of Common Rogs. at 7, 10. In fact, in responding to UltimatePointer's Interrogatory No. 1 which asked Nintendo to describe in detail all facts and legal bases

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
2:14-cv-00865-RSL                    -29-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

supporting each of Defendants' affirmative defenses, Defendants provided the same response for the doctrine of unclean hands, waiver, estoppel, and laches. *Id.* Thus, for at least the reasons noted above, Defendants cannot prevail on the equitable defense of waiver. *See Qualcomm Inc.*, 548 F.3d at 1020.

## IV.   CONCLUSION

For the above recited reasons, UltimatePointer is entitled to summary judgment that: 1) the asserted claims are not anticipated by Leichner, Ishino, Sato, Clarke, and/or Sanbe; 2) the asserted claims are not obvious; 3) claims 1, 3, 5, and 6 of the '729 patent are not indefinite; 4) claims 1, 3, 5, 6, and 12 of the '729 patent are not invalid for lack of enablement; 5) equitable estoppel, laches, unclean hands, and waiver do not bar UltimatePointer's claims.

*//*

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL                                       -30-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

Respectfully submitted this 4th day of September, 2014.

s/ Bradley S. Keller
Bradley S. Keller, WSBA #10665
Email: bkeller@byrneskeller.com
BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile:  (206) 622-2522

Gregory L. Maag (admitted pro hac vice)
Email: gmaag@conleyrose.com
Charles J. Rogers (admitted pro hac vice)
Email: crogers@conleyrose.com
Thomas L. Warden (admitted pro hac vice)
Email: twarden@conleyrose.com
Michael J. Guthrie (admitted pro hac vice)
Email: mguthrie@conleyrose.com
CONLEY ROSE, P.C.
1001 McKinney Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 238-8000
Facsimile:  (713) 238-8088

**ATTORNEYS FOR PLAINTIFF
ULTIMATEPOINTER, L.L.C.**

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL                     -31-

CONLEY ROSE, P.C.
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing ***Plaintiff's Motion for Summary Judgment*** was filed electronically using the Court's CM/ECF system, and that the Notice of Electronic Filing constitutes service on all counsel who are registered participants in the ECF system.

/s/ Bradley S. Keller
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
bkeller@byrneskeller.com

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
2:14-cv-00865-RSL                    -1-

**CONLEY ROSE, P.C.**
1001 McKinney St., Suite 1800
Houston, Texas 77002
(713) 238-8000