UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
ULTIMATEPOINTER, LLC, )
) Case No. C14-0865RSL
                Plaintiff, )
    v. )
) ORDER REGARDING
NINTENDO CO., LTD., and NINTENDO ) PLAINTIFF'S MOTION FOR
OF AMERICA, INC., ) SUMMARY JUDGMENT
)
                Defendants. )
_____)

This matter comes before the Court on "Plaintiff's Motion for Summary Judgment." Dkt. # 487. Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). Where the party moving for summary judgment has raised an issue which, after fair and full ventilation, requires judgment in favor of the non-moving party, the district court may sua sponte enter judgment against the moving party even in the absence of a cross-motion. Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014); Fed. R. Civ. P. 56(f)(1).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

ORDER REGARDING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

**A. Invalidity Defenses**

Under 35 U.S.C. § 282, the claims of an issued patent are presumed to be valid. See PharmaStem Therapeutics, Inc. v. ViaCell, Inc., 491 F.3d 1342, 1366 (Fed. Cir. 2007) (acknowledging "the deference that is due to a qualified government agency presumed to have done its job"). The Federal Circuit therefore requires that an accused infringer prove invalidity by clear and convincing evidence. Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1310 (Fed. Cir. 2011).

   **1. Anticipation**

"A patent claim is anticipated if each and every limitation is found in a single prior art reference." OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc., 701 F.3d 698, 704 (Fed. Cir. 2012). Plaintiff argues that summary judgment regarding five of the eight prior art references relied upon by Nintendo is appropriate because Nintendo's expert, Dr. Gregory F. Welch, acknowledges that the references lack at least one of the limitations claimed in the '321 and/or '729 patents. Using the Leichner reference as an example, Dr. Welch opines, based on the governing claim construction and his understanding of the prior art, that Leichner does not disclose a direct pointing device as required by claim 12 of the '321 patent or claims 1, 3, 5, 6, or 12 of the '729 patent. Dkt. # 509-1 at ¶¶ 162 and 178. Thus, left to his own devices, Dr. Welch would not say that Leichner anticipates those claims. In the context of this litigation, however, Dr. Welch's opinions are offered in response to plaintiff's infringement contentions and must take those contentions into consideration in order to be useful. With regards to Leichner, UltimatePointer's infringement contentions against the accused product suggest that it would understand Leichner as disclosing a direct pointing device. Dr. Welch posits that if that were the case, then Leichner contains the "missing" limitation and the claims asserted in this case would be anticipated.

To be clear, Dr. Welch does not believe that the Leichner reference or the accused product contain the necessary direct pointing device. But if UltimatePointer were able to

ORDER REGARDING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -2-

convince the factfinder that the Wii does, indeed, practice a direct pointing device as that term was construed in this litigation, then it is his opinion that the Leichner reference does too. Thus, to the extent UltimatePointer is permitted to argue that a device that estimates a point of aim based on light received from two emitters is a direct pointing device, Dr. Welch will be permitted to explain why such an application of the claim language is invalidating. The same argument applies to Dr. Welch's opinions that the Sato reference anticipates claim 12 of the '321 patent (Dkt. # 509-1 at ¶ 168), that the Clarke reference anticipates claims 1, 3, 5, 6, and 12 of the '729 patent (Dkt. # 509-1 at ¶ 182), that the Sanbe reference anticipates claims 1, 3, 5, 6, and 12 of the '729 patent (Dkt. # 509-1 at ¶ 189), and the other Leichner-related opinions.

With regards to the Ishino reference, UltimatePointer challenges the substance of Dr. Welch's opinion that the reference anticipates claim 12 of the '321 patent, arguing that the opinion is unsupported by the analysis in the report. In particular, UltimatePointer points out that Dr. Welch does not assert or explain how an invention used to "change the perspective of a background virtual reality space" of a video game, as disclosed in Ishino (Dkt. # 509-1 at ¶ 152), satisfies the claim requirement for controlling a cursor on a computer screen image. It is not clear why UltimatePointer insists that the perspective altering aspects of the Ishino reference must align with and satisfy the "controlling a cursor" function. Dr. Welch describes the Ishino system at ¶¶ 151-52 of his report, including target points on the screen and predetermined movements of the image in response to a hit. When asked at deposition to identify what portion of the Ishino reference discloses a controlling parameter related to the position of a cursor, Dr. Welch stated that "the image of the target point" described in Ishino or the possibility that there is "some sort of mark on the screen where the gun is pointed" could stand in for the cursor described in claim 12. There is, therefore, evidence in the record to support his anticipation opinion as to the Ishino reference.

### 2. Obviousness

For the reasons stated in the "Order Granting in Part Plaintiff's Motions in Limine," Dr. Welch may testify regarding obviousness to the extent those opinions are based on his anticipation analysis. Although he may not testify regarding his vague and conclusory opinion that claim 12 of the '321 patent is obvious in light of the Leichner reference, the exclusion of that evidence does not warrant summary judgment in plaintiff's favor. Dr. Welch opines that a number of references invalidate claim 12 of the '321 patent: that evidence remains and precludes summary judgment.

### 3. Indefiniteness

A claim will be invalid for indefiniteness if it is "not amendable to construction" or is "insolubly ambiguous." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1373 (Fed. Cir. 2011). Claims 1, 3, 5, and 6 of the '729 patent are apparatus claims disclosing "a handheld device including: an image sensor, said image sensor generating data . . . ." The claims set forth both an apparatus – a handheld device including an image sensor – and a use for the apparatus – "generating data." Such claims are indefinite because it is unclear whether the claim is infringed when one creates the system described (as one would normally expect with an apparatus claim) or whether infringement occurs only when the system is put to the specified use. Manual of Patent Examination Procedure, § 2173.05(p)(II) (8th ed. rev. 2010) ("A single claim which claims both an apparatus and the method steps of using the apparatus is indefinite under 35 U.S.C. § 112, second paragraph."); Rembrandt Data Techs., LP v. AOL, LLC, 641 F.3d 1331, 1339-40 (Fed. Cir. 2011); In re Katz Interactive Call Processing Patent Litig., 639 F.3d 1303, 1318 (Fed. Cir. 2011); IPXL Holdings, LLC v. Amazon.com, Inc., 430 F.3d 1377, 1383-84 (Fed. Cir. 2005); UltimatePointer, LLC v. Nintendo Co., Ltd., 2013 WL 2325118, at *22-23 (E.D. Tex, May 28, 2013) (invalidating claims 15, 19, 20, 23, and 25 of the '321 patent because they are "not definite as to whether the claim is infringed when the pointing-device apparatus is made or sold, or when a user actually uses it to direct a pointing line.").

UltimatePointer's reliance on Microprocessor Enhancement Corp. v. Texas Instruments, Inc., 520 F.3d 1367, 1374-77 (Fed. Cir. 2008), is misplaced. One of the claims at issue in that case was a method claim, the preamble of which specified the physical structure in which the claimed method is practiced. The court found that such preambles are not unusual and do not give rise to the sort of ambiguity that would invalidate a claim for indefiniteness: infringement of the claim was clearly limited to practicing the method in the specified structure. The second claim at issue in Microprocessor Enhancement recited an apparatus with certain functional capabilities. The court easily concluded that such claims are infringed when one creates a system having the requisite capabilities. Because actual use was not specified in or required by the claim, there was no ambiguity or indefiniteness.

Neither of those situations is presented here. In the context of evaluating Dr. Dubowsky's "in-the-box" opinions, the Court has already determined that the phrase "generating data" arguably requires the actual generation of data by the image sensor, not merely a capability to generate data, before infringement occurs. UltimatePointer has therefore claimed an apparatus and its use in a single claim, giving rise to exactly the type of ambiguity that led to the invalidation of the claims in IPXL Holdings and its progeny. Because a competitor would be hard-pressed to discern whether creating the system described in the apparatus claims would constitute infringement or whether the infringement would arise when the apparatus is used to perform the specified function, claims 1, 3, 5, and 6 of the '729 patent are indefinite and invalid as a matter of law.[1]

**4. Enablement**

"Enablement serves the dual function in the patent system of ensuring adequate disclosure of the claimed invention and of preventing claims broader than the disclosed

---

[1] In its opposition memorandum, Nintendo specifically requested entry of judgment on this issue in its favor. Plaintiff, having had a full and fair opportunity to respond both in writing and at oral argument, has failed to identify any factual issue precluding summary judgment regarding indefiniteness. See Fed. R. Civ. P. 56(e)(1).

invention. . . . [A] patentee chooses broad claim language at the peril of losing any claim that cannot be enabled across its full scope of coverage." MagSil Corp. v. Hitachi Global Storage Techs., Inc., 687 F.3d 1377, 1380-81 (Fed. Cir. 2012).  The enablement requirement is satisfied when, at the time the application is filed, one skilled in the art could read the specification and practice the invention without "undue experimentation." In re Wands, 858 F.2d 731, 736-37 (Fed. Cir. 1988).  Nintendo, as the party seeking to invalidate plaintiff's patents, has the burden of showing by clear and convincing evidence that the claimed invention could not have been practiced at the time of filing without an amount of experimentation that went beyond routine trial and error and was instead "undue." Cephalon, Inc. v. Watson Pharms., Inc., 707 F.3d 1330, 1336 (Fed. Cir. 2013).

UltimatePointer seeks summary judgment on the grounds that (a) Nintendo has failed to present any evidence tending to establish that certain limitations of claims 5, 6, and 12 of the '729 patent are not enabled, and (b) its evidence regarding other limitations is inadmissible and/or unpersuasive.[2] Nintendo has not addressed the first argument.  The Court therefore finds that there is no evidence to support Nintendo's contention that claims 5, 6, and 12 of the '729 patent are invalid because the claimed "image sensor generating data including data of the calibration points" and "generating data including data of the calibration points" are not enabled.

With regards to the second argument, the Court has already found that Dr. Welch's testimony regarding enablement is admissible. See Order Granting in Part Plaintiff's Motions in Limine at 10-11. Dr. Welch's enablement analysis is based on UltimatePointer's infringement contentions.  Essentially, Dr. Welch opines that by identifying the Wii sensor bar as the "first point" and/or a "calibration point," UltimatePointer makes it impossible for one of ordinary skill in the art to figure out how to use the distance between the specified points or data regarding

---

[2] UltimatePointer has abandoned its argument that Dr. Welch was required to analyze each of the factors listed in the enablement case law.

ORDER REGARDING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT           -6-

1  those points to control a cursor on the screen through direct pointing.  Dr. Welch also opines that
2  the addition of orientation limitations in dependent claims 3 and 6 does not cure the enablement
3  problems.  There is, therefore, admissible evidence in support of Nintendo's contention that
4  claims 1, 3, 5, 6, and 12 of the "729 patent are invalid for lack of enablement.

**B. Equitable Defenses**

Nintendo has asserted a number of equitable defenses against plaintiff's infringement claims.  The Court has already determined that the accused product does not infringe any of the asserted claims.  See Order Granting Defendants' Motion for Summary Judgment of Non-Infringement.  Thus, there is no need to determine whether equity bars plaintiff's claims.

For all of the foregoing reasons, plaintiff's motion for summary judgment is, for the most part, DENIED.  The only argument on which UltimatePointer is entitled to summary judgment relates to Nintendo's contention that claims 5, 6, and 12 of the '729 patent are invalid because the claimed "image sensor generating data including data of the calibration points" and "generating data including data of the calibration points" are not enabled.  That particular invalidity argument is now foreclosed.  With regards to the other invalidity defenses, Nintendo has either raised a genuine issue of material fact or has shown that, in fact, Nintendo is entitled to judgment as a matter of law.  Having found that claims 1, 3, 5, and 6 of the '729 patent are indefinite, the Court hereby enters summary judgment of invalidity as to those claims.  UltimatePointer's motion for judgment on the equitable defenses is DENIED as moot.

At this point in the litigation, only Nintendo's counterclaim challenging the validity of claim 12 of the '321 patent and claim 12 of the '729 patent remains.  The Court assumes that Nintendo will not pursue its counterclaim, having established that the Wii does not infringe either claim.  If that assumption is incorrect, Nintendo shall notify the Court by 4:00 pm

tomorrow (Tuesday, December 23, 2014) and shall provide a brief statement of how many trial days will be needed to litigate the remaining counterclaim.  If no notice is filed, judgment will be entered in this matter against plaintiff and in favor of defendant.[3]  In either case, the trial currently schedule for January 5, 2014, is hereby continued.

Dated this 22nd day of December, 2014.

*[signature]*

Robert S. Lasnik
United States District Judge

---

[3] The judgment would be without prejudice to defendant challenging the validity of the method claims if, after appeal, this matter were to return to the district court.