1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13

_____
                                                    )
ULTIMATEPOINTER, LLC,                    )
                                                    )          Case No. C14-0865RSL
                              Plaintiff,       )
                                                    )
        v.                                       )
                                                    )          ORDER GRANTING IN PART
NINTENDO CO., LTD., and NINTENDO  )          PLAINTIFF'S MOTIONS *IN LIMINE*
OF AMERICA, INC.,                          )
                                                    )
                              Defendants.  )
_____)

14        This matter comes before the Court on "Plaintiff's Motion *in Limine* to Exclude

15   Certain Opinions by Defendants' Experts."  Dkt. # 483.  Having reviewed the memoranda,

16   declarations, and exhibits submitted by the parties, and having heard the arguments of counsel,

17   the Court finds as follows:

18        Pursuant to Fed. R. Ev. 702:

19        If scientific, technical, or other specialized knowledge will assist the trier of fact to
20        understand the evidence or to determine a fact in issue, a witness qualified as an
          expert by knowledge, skill, experience, training, or education, may testify thereto
21        in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient
          facts or data, (2) the testimony is the product of reliable principles and methods,
22        and (3) the witness has applied the principles and methods reliably to the facts of
23        the case.

24   In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court charged trial

25   judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony

26

1  from reaching the jury.  The gatekeeping function applies to all expert testimony, not just

2  testimony based on science.  <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999).  To be

3  admissible, expert testimony must be both reliable and helpful.  The reliability of expert

4  testimony is judged not on the substance of the opinions offered, but on the methods employed

5  in developing those opinions.  <u>Daubert</u>, 509 U.S. at 594-95.  In general, the expert's opinion

6  must be based on principles, techniques, or theories that are generally accepted in his or her

7  profession and must reflect something more than subjective belief and/or unsupported

8  speculation.  <u>Daubert</u>, 509 U.S. at 590.  The testimony must also be "helpful," such that a valid

9  connection between the opinion offered and the issues of the case exists.  <u>Daubert</u>, 509 U.S. at

10  591-92.

11          In a patent case, an expert's testimony will not be helpful if it goes to issues that

12  will never be put before the jury.  Ever since <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S.

13  370, 384-91 (1996), a basic precept of patent law has been that the court, not the jury, construes

14  the scope and meaning of the claims in the patents-in-suit.  The Honorable Leonard Davis, with

15  the assistance of the parties, construed contested terms in May 2013.  Those constructions (along

16  with any constructions stipulated by the parties) will be presented to the jury, which will then

17  determine validity and infringement based on those constructions and the plain meaning of

18  unconstrued terms.  The jury will not be asked to construe additional claim terms or to

19  reconsider the court's constructions.  With these general rules in mind, the Court considers each

20  of plaintiff's arguments.

21  **A.  Dr. Steven Dubowsky**

22          Dr. Dubowsky is a technical expert.  UltimatePointer identifies a number of words,

23  phrases, and clauses that Dr. Dubowsky used in his report that are not in Judge Davis' claim

24  construction order and seeks their exclusion on the ground that the expert is attempting to alter

25  existing claim constructions or to construe additional claims.  Most of the paragraphs that

26  contain the offending language are directed at rebutting opinions offered by plaintiff's experts.

In attempting to show that neither the claim language nor the underlying technology justifies the opposing opinions, Dr. Dubowsky explains what the invention does and how the claim language is actually manifested – or not manifested – in Nintendo's products.  Although he does not necessarily parrot Judge Davis' language, the fact that there are "new" words in Dr. Dubowsky's report does not make the opinions unreliable or unhelpful.  The new words must be inconsistent with Judge Davis' claim construction to warrant exclusion.

**1.  Simultaneous Measurements from Pointing Line**

Claim 12 of the '321 patent recites:

A method for controlling a parameter related to position of a cursor on a computer screen image, comprising:

measuring a first angle between a pointing line and a first line;

measuring a second angle between said pointing line and a second line, said first line being related in a predetermined way to a geographic reference, said second line being related in a predetermined way to a geographic reference, said pointing line having a predetermined relation to said pointing device, and

using a first parameter related to the first angle, and a second parameter related to the second angle to control the parameter of said cursor on said computer screen image,

whereby said cursor position parameter is controlled by movement of said pointing device.

Dr. Dubowsky opines that, based on his understanding of Claim 12 and the underlying math and physics concepts, the first and second angles cannot simply be the same angle measured at two different times.  While the Court is unwilling to import a limitation that requires that the two angles be measured at exactly the same time, the plain language of the claim specifies and differentiates between the first and second lines, angles, and parameters.  UltimatePointer and its experts cannot simply ignore the requirement for a first and second angle by measuring the same angle twice:  such a construction would fail to give meaning to the claim language and, in Dr.

1  Dubowsky's opinion, would not enable someone to place the cursor on the screen (causing the

2  prescribed method to fail).  UltimatePointer's motion to exclude Dr. Dubowsky's testimony on

3  this point is DENIED:  to the extent plaintiff is permitted to argue that the claim can be satisfied

4  by measuring the same angle at two different times, Dr. Dubowsky will be permitted to explain

5  why such an interpretation of the claim language is incorrect and/or invalidating.

6  **2. "Image Sensor"**

7  Claims 1, 3, 5, 6, and 12 of the '729 patent recite a handheld device containing an

8  "image sensor."  Judge Davis construed the phrase to mean "a device that measures the intensity

9  of reflected light from an image."  Dkt. # 268 at 28.  UltimatePointer has taken the position that

10  Nintendo's product contains this element because its image sensor senses light from the infrared

11  LEDs on the Wii sensor bar.  Nintendo acknowledges that the LEDs contain a reflector cup that

12  may "reflect light from an image," but argues that they also emit their own, unreflected light, and

13  that the Wii's image sensor is unable to distinguish between the reflected light and the emitted

14  light.  Such an argument is in no way inconsistent with Judge Davis's construction of the claim.

15  If the evidence, including the expert testimony, shows that Nintendo's image sensor cannot

16  distinguish between the sources of light, it is hard to imagine how UltimatePointer will be able

17  to show that the device "measures the intensity of reflected light from an image" as opposed to

18  simply measuring the intensity of all light coming from the LEDs.  UltimatePointer's motion to

19  exclude Dr. Dubowsky's testimony on this point is DENIED.

20  **3. "Image"**

21  Claim 1 of the '729 patent describes an "apparatus for controlling a feature on a

22  computer generated image" that utilizes spatial data from the handheld device "to control the

23  feature on the image."  Dr. Dubowsky adopts Judge Davis's finding that the "feature" at issue is

24  not part of the underlying displayed image (Dkt. # 268 at 27) and argues that UltimatePointer

25  will not be able to prove that spatial data from the handheld device is used in any way given its

26  experts' opinions regarding the "image sensor."

1    UltimatePointer takes issue with the fact that Dr. Dubowsky assumes that the
2    image on which the feature appears is the same image sensed by the "image sensor."  Plaintiff
3    offers no other viable construction of the term "image" in claim 1, however, and apparently
4    agreed with that construction during the <u>Markman</u> hearing.  Dkt. # 227-19 at ¶¶ 4-5 (plaintiff's
5    expert declaring that the "image" for purposes of the '321 and '729 patents is "a visible
6    representation of something or someone" on "a computer display or computer screen.").  Dr.
7    Dubowsky's assumption is in no way inconsistent with Judge Davis's claim construction.
8    Plaintiff's motion to exclude this testimony is DENIED.

9    **4.  The "First Point" as a "Calibration Point"**

10    UltimatePointer's experts contend that the "first point," as that term is used in
11    claims 1 and 3 of the '729 patent, corresponds to the location of the Wii sensor bar.  Dr.
12    Dubowsky argues that such an interpretation is nonsensical from a mathematical standpoint, and
13    that even if the sensor bar could be considered a "point," plaintiff's experts have not opined that
14    the location of the sensor bar is used to calibrate anything, as is required by the claims.
15    UltimatePointer points out that claims 1 and 3 "*do not even use the word* 'calibration," (Dkt.
16    # 485 at 5 (emphasis in the original)) and suggests that Dr. Dubowsky is improperly adding a
17    limitation to the claim.  Judge Davis, however, equated "first point" with "calibration point," and
18    defined both "as a point having a predetermined relation to the image generated by the
19    computer."  The language of claims 1 and 3 also supports Dr. Dubowsky's opinion that if the
20    distance between the sensor bar and a second point is not used to control the feature on the
21    image, the term "first point" is not satisfied by the Wii system.  Dr. Dubowsky's testimony on
22    this point is both helpful and reliable and will not be excluded.

23    **5.  "Calibration Point"**

24    In response to plaintiff's experts' opinion that the infrared LEDs on the Wii sensor
25    bar are the "first point" or the "calibration point" required by claims 5 and 6 of the '729 patent,
26    Dr. Dubowsky reiterates that the lights would not normally be considered a "point" and that even

1  if that were the case, (a) data regarding the lights is not used to control the feature on the image

2  and (b) the lights are not "in a predetermined relationship to the image" as required by the

3  claims.  These opinions are consistent with Judge Davis' claim construction and would be both

4  helpful and reliable.

5         Dr. Dubowsky goes on, however, to further limit the term "calibration point" as a

6  point "in the plane of the computer-generated image and close to the boundaries of the image"

7  (Dkt. # 484 at 18 (¶ 104)) or as a point "used to establish 'the shape, position, size and

8  orientation" of a television screen (Id. at ¶ 105).  To the extent these limitations are supported by

9  the specification and/or are what one of ordinary skill in the art would understand, they should

10 have been presented to Judge Davis during the <u>Markman</u> hearing for consideration.  They cannot

11 be superimposed on the term "calibration point" at this point in the litigation and will not be

12 admitted at trial.

13      **6.  "In the Box" Opinions**

14        "[W]hoever without authorization makes, uses, offers to sell, or sells any patented

15 invention . . . infringes the patent."  35 U.S.C. § 271(a).  Dr. Dubowsky opines that Nintendo

16 does not sell or offer for sale a product that satisfies all of the limitations of claim 12 of the '321

17 patent and claims 1, 3, 5, 6, and 12 of the '729 patent because the Wii is packaged for sale in a

18 box without a screen capable of displaying the necessary "computer generated image," without

19 an electrical source that would allow the accused product to generate, receive, or measure the

20 specified inputs, and without the "predetermined relationship" between the various components.

21 Dkt. # 484 at 22-23 (¶¶ 127-34).

22        UltimatePointer argues that Dr. Dubowsky's "in-the-box" opinions regarding

23 claims 1, 3, 5, and 6 of the '729 patent rest on an incorrect legal premise, namely that functional

24 limitations contained in apparatus claims must always be present in order to show infringement.[1]

25

26       [1] Plaintiff does not address the propriety of Dr. Dubowsky's "in-the-box" opinions regarding the
two method claims asserted, claim 12 of the '321 patent and claim 12 of the '729 patent.

1  "[I]n every infringement analysis, the language of the claims, as well as the nature of the accused

2  product, dictates whether an infringement has occurred."  Fantasy Sports Props. v.

3  Sportsline.com, Inc., 287 F.3d 1108, 1118 (Fed. Cir. 2002).  The issue with respect to the four

4  apparatus claims of the '729 patent is whether the claims simply describe structures that have

5  certain capabilities or whether they require that a particular capability be presently active or

6  enabled.  Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1204-05 (Fed. Cir. 2010).

7         In this case, the claims have multiple clauses, some of which describe structures

8  that have certain functions but some of which arguably describe structures that have active

9  functionality.  As an example of the first type of structure, all of the claims describe an apparatus

10 "for controlling a feature on a computer generated image."  This limitation is satisfied if the

11 accused product contains an apparatus "for controlling" the stated feature on a computer image:

12 it does not require that the "feature" or the "computer generated image" be present at all times.

13 As the Federal Circuit found in Finjan, reciting a structure as having a specific purpose in the

14 "for controlling" or "for obtaining" or "for preventing" style requires only capability, not

15 enablement.  626 F.3d at 1205.  On the other hand, to the extent the identified structures are not

16 simply described as having a specific purpose or function but rather as actually performing those

17 functions, the claim may not be infringed until the ability to perform is present.  Cross Med.

18 Prods., Inc. v. Medtronic Sofamar Danek, Inc., 424 F.3d 1293, 1311-12 (Fed. Cir. 2005).  Claim

19 language reciting an "image sensor generating data," for example, arguably requires the actual

20 generation of data, not merely the ability to generate data.

21        To the extent Dr. Dubowsky's "in-the-box" opinions require enablement when the

22 claim language requires only capacity, they are inadmissible.  The opinions stated in ¶¶ 127,

23 131, and 134 of his report will be excluded.

24

25

26

1 **B. Dr. Gregory F. Welch**

2          Dr. Welch has offered opinions regarding the invalidity of the '321 and '729

3 patents.  In particular, Dr. Welch opines that eight prior art references, considered individually or

4 in various combinations, render obvious the claims in the subject patents, that the '729 patent

5 lacks an enabling disclosure, and that claims 1, 3, 5, and 6 of the '729 patent are indefinite.

6          **1. Obviousness**

7          Pursuant to 35 U.S.C. § 103(a), a patent will not issue "if the differences between

8 the subject matter sought to be patented and the prior art are such that the subject matter as a

9 whole would have been obvious at the time the invention was made to a person having ordinary

10 skill in the art . . . ."  Nintendo, the party seeking to invalidate plaintiff's patents based on

11 obviousness, has the burden of showing by clear and convincing evidence "that a skilled artisan

12 would have had reason to combine the teaching of the prior art references to achieve the claimed

13 invention, and that the skilled artisan would have had a reasonable expectation of success from

14 doing so."  Procter & Gamble Co. v. Teva Pharms. USA, Inc., 566 F.3d 989, 994 (Fed. Cir.

15 2009).  Obviousness is an issue of law decided after consideration of certain underlying facts,

16 including (a) the scope and content of the prior art, (b) differences between the claimed

17 invention and the prior art, (c) the level of ordinary skill in the art, and (d) secondary

18 considerations, such as commercial success, long-felt need, and the failure of other efforts to

19 satisfy the need.  Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).

20          Dr. Welch opines that each of the claims in this litigation are made obvious by one

21 or more of the eight prior art references listed in Tables 3 and 4 of his report.  Dkt. # 509-1 at

22 ¶¶ 115-16.  These opinions are individually stated at ¶¶ 160-94 of his report and are supported

23 by claim charts setting forth the scope and content of the prior art, a description of a person of

24 ordinary skill as of the priority dates, and a discussion of secondary considerations related to

25 obviousness.  What appears to be lacking in most instances is a statement of the differences

26 between the claimed invention and the prior art and why one of ordinary skill would have reason

to combine the prior teachings.  This seems to be a function of the fact that Dr. Welch believes each asserted claim is anticipated, such that there are no missing limitations or relevant differences requiring separate discussion in the context of an obviousness analysis. See, e.g., Dkt. # 509-1 at ¶ 161 (describing any limitation missing from the Wilson reference as "insignificant").  Dr. Welch's anticipation analysis is unchallenged, and "it is commonly understood that prior art references that anticipate a claim will usually render that claim obvious . . . ." Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1364 (Fed. Cir. 2008).  Thus, Dr. Welch's obviousness analysis is not unreliable simply because it rests on a showing that each limitation is actually anticipated, even if that means there are no relevant differences requiring discussion.  Taken in conjunction with Dr. Welch's statements regarding the level of ordinary skill in the art and the relevant technology, it is clear that these opinions are based on an appropriate consideration of the facts relevant to the obviousness analysis.  To the extent Dr. Welch's obviousness opinions are based on his anticipation analysis, they are both reliable and helpful.

Where Dr. Welch acknowledges a non-trivial or significant difference, however, he does not provide enough explanation for what would prompt one skilled in the art to supply the missing limitation.  This problem is limited, however, and seems to be an issue only with regards to the Leichner reference and claim 12 of the '321 patent.  Dr. Welch simply states that the lack of a "direct pointing device" limitation in Leichner does not preclude a finding of obviousness "because one skilled in the art would have readily recognized at the time of the alleged invention that Leichner could easily be modified or configured to be a direct pointing device." See, e.g., Dkt. # 509-1 at ¶ 163.  Given nothing more than Dr. Welch's report, the Leichner reference, and the '321 patent, a jury would be hard-pressed to understand what would lead a skilled artisan to reconfigure the Leichner invention so that it became a direct pointing device.  The vague and conclusory testimony on this topic "would not be helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness." Innogenetics, N.F.

1  v. Abbott Labs., 512 F.3d 1363, 1373 (Fed. Cir. 2008).  The opinion stated in ¶ 163 of Dr.

2  Welch's report will therefore be excluded.

3      **2.  Enablement**

4         "Enablement serves the dual function in the patent system of ensuring adequate

5  disclosure of the claimed invention and of preventing claims broader than the disclosed

6  invention. . . . [A] patentee chooses broad claim language at the peril of losing any claim that

7  cannot be enabled across its full scope of coverage."  MagSil Corp. v. Hitachi Global Storage

8  Techs., Inc., 687 F.3d 1377, 1380-81 (Fed. Cir. 2012).  The enablement requirement is satisfied

9  when, at the time the application is filed, one skilled in the art could read the specification and

10  practice the invention without "undue experimentation."  In re Wands, 858 F.2d 731, 736-37

11  (Fed. Cir. 1988).  Nintendo, as the party seeking to invalidate plaintiff's patents, has the burden

12  of showing by clear and convincing evidence that the claimed invention could not have been

13  practiced at the time of filing without an amount of experimentation that went beyond routine

14  trial and error and was instead "undue."  Cephalon, Inc. v. Watson Pharms., Inc., 707 F.3d 1330,

15  1336 (Fed. Cir. 2013).[2]

16         UltimatePointer objects to Dr. Welch's enablement analysis because it is based on

17  a claim construction other than that provided by the Court.  Plaintiff does not, however, identify

18  a term or phrase that is used in a manner that is inconsistent with Judge Davis' constructions.

19  More importantly, Dr. Welch's opinions are offered in response to plaintiff's infringement

20  contentions.  The purpose of the testimony is to show that, if UltimatePointer's understanding of

21  the scope of its invention is correct (e.g., that a "predetermined relationship" exists even if the

22  only thing we know about the "calibration points" is that they are above or below the image), the

23  patent does not teach how such minimal information could be used to control a feature on the

24  image, as required by the rest of the claim.  To be clear, Dr. Welch does not believe that simply

25

26      [2] UltimatePointer has abandoned its argument that Dr. Welch was required to analyze each of the factors listed in the enablement case law.

ORDER GRANTING IN PART
PLAINTIFF'S MOTIONS *IN LIMINE*      -10-

1   knowing that the calibration points are above or below the image satisfies the "predetermined

2   relationship" limitation:  he is attempting to show that such a broad interpretation gives rise to

3   other problems, such as a failure to enable.  In that context, these opinions are both reliable and

4   helpful.

5       **3.  Indefiniteness**

6           A claim will be invalid for indefiniteness if it is "not amendable to construction" or

7   is "insolubly ambiguous." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364,

8   1373 (Fed. Cir. 2011).  Dr. Welch opines that claims 1, 3, 5, and 6 of the '729 patent are mixed

9   method-apparatus claims and are therefore so confusing that it is unclear whether they would be

10  satisfied by an apparatus that simply has the capability of performing the method steps or

11  whether the apparatus has to actually perform the steps.  Dkt. # 509-1 at ¶ 210.  To the extent Dr.

12  Welch is attempting to establish, as a factual matter, that one skilled in the art would find the

13  claims insolubly ambiguous, he offers nothing more than conclusory statements with virtually no

14  discussion of the claim language or how one of ordinary skill would understand it.

15  Indefiniteness is a legal issue.  If claims 1, 3, 5, and 6 of the '729 patent cover both an apparatus

16  and a method of use of that apparatus, they are indefinite under governing Federal Circuit case

17  law.  See Rembrandt Data Techs., LP v. AOL, LLC, 641 F.3d 1331, 1339-40 (Fed. Cir. 2011);

18  IPXL Holdings, LLC v. Amazon.com, Inc., 430 F.3d 1377, 1383-84 (Fed. Cir. 2005).  Dr.

19  Welch's conclusory statements regarding the nature of the claims are unhelpful and will be

20  excluded.

21  **C.  Thomas W. Britven**

22          Mr. Britven is Nintendo's damages expert.  UltimatePointer seeks to exclude his

23  testimony to the extent his damage model relies on a methodology not consistent with Federal

24  Circuit case law and/or evidence regarding settlement agreements Nintendo has entered in the

25  past.

26

### 1. "Smallest Salable Patent-Practicing Unit"

Plaintiff takes issue with the fact that Mr. Britven did not perform a complete analysis to identify the "smallest salable patent-practicing unit" ("SSPPU") and argues that his damage calculation should be excluded because it is based on something other than the SSPPU. Plaintiff puts too much emphasis on the SSPPU in the context of Mr. Britven's rebuttal opinion.

If UltimatePointer is able to establish that Nintendo infringed its patents, it will be entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284. Damages are only recoverable if they are attributable to the infringing use of the claimed invention.  Thus, when the invention makes up a single component of a larger product, as is the case here, the patentee:

> must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, be equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reasons that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.

Garretson v. Clark, 111 U.S. 120, 121 (1884).  Under Federal Circuit law, one way a patentee can tie damages to the claimed invention (rather than to the entire market value of the accused product) is to identify the smallest salable unit containing the patented invention and seek a royalty based on that unit.  But the SSPPU analysis "is simply a step toward meeting the requirement of apportionment."  Virnetx, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1327 (Fed. Cir. 2014).  If the SSPPU itself is a multi-component product containing several non-infringing features that are unrelated to the invention, simply identifying the SSPPU does not necessarily solve "the fundamental concern" that the damage calculation will be skewed.  Id.  In such instances, more must be done "to estimate what portion of the value of [the SSPPU] is attributable to the patented technology."  Id.

Plaintiff's expert has opined that the SSPPU is the Wii console, sensor bar, and handheld controller and has calculated a reasonable royalty based on those components. Mr. Britven, in rebuttal, argues that those components include a wide array of non-patented features that independently contribute to the operation and value of the Wii, and that using the identified SSPPU to assign value to the patented features grossly overstates plaintiff's damages. Dkt. # 503 at 58. Such testimony is reliable and will be helpful to the jury as it attempts to apportion damages between unpatented and patented features of the Wii system.

Mr. Britven also offers the opinion that the retail price of the Wii system is a reflection not just of the technology in the box, but also of certain commercial, non-technical attributes Nintendo possesses. Dkt. # 503 at 59-60. Plaintiff argues that such considerations are improper in an SSPPU analysis (Dkt. # 513 at 8), but Mr. Britven's opinion goes more toward the hypothetical negotiation than a straight apportionment between patented and unpatented features. The jury will have to determine what royalty the parties would have agreed upon had they successfully negotiated a license just before infringement began. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009). In that context, Mr. Britven's opinion is helpful in understanding Nintendo's hypothetical negotiating position, namely that some portion of the retail price attributable to defendants' market share, brand recognition, reputation, retail network, etc., should be walled off from any royalty calculation as unrelated to plaintiff's technical contribution. The testimony is both reliable and helpful in that context.

## 2. Settlement Agreements

In his report, Mr. Britven discusses settlement agreements Nintendo entered into with other patent holders for technology embedded in the Wii. Dkt. # 503 at 43. The evidence is offered to inform the hypothetical negotiation by providing insight into the range of rates Nintendo has been willing to pay for features incorporated into the Wii and the royalties that have been accepted by other patent holders. One of the agreements involved a patent relating to three-dimensional pointing devices and is arguably similar to the technology claimed in the '321

1   and '729 patents.  While the probative value of settlement agreements to prove a reasonable

2   royalty is reduced by the fact that they were not negotiated just before infringement began and

3   often reflect unrelated pressures associated with litigation (see LaserDynamics, Inc. v. Quanta

4   Computer, Inc., 694 F.3d 51, 77 (Fed. Cir. 2012)), plaintiff makes no attempt to show that the

5   facts surrounding any of the agreements upon which Mr. Britven relied make them particularly

6   unreliable or how their consideration would be prejudicial.  Having failed to show that the

7   likelihood of unfair prejudice or confusion outweighs the probative value of the evidence, the

8   motion to exclude is DENIED.

9

10          For all of the foregoing reasons, plaintiff's motion *in limine* to exclude certain

11   expert testimony (Dkt. # 483) is GRANTED in part and DENIED in part.

12          Dr. Dubowsky will not be permitted to add limitations to the term "calibration

13   point" (Dkt. # 484 at 18 (¶ 104 and ¶ 105)), nor will he be permitted to offer "in-the-box"

14   opinions when the claim language requires only capacity (Dkt. # 484 at 22-24 ( ¶¶ 127, 131, and

15   134)).

16          Dr. Welch will not be permitted to testify that the Leichner reference renders

17   obvious claim 12 of the '321 patent (Dkt. # 509-1 at ¶ 163) or that claims 1, 3, 5, and 6 of the

18   '729 patent are invalid as indefinite (Dkt. # 509-1 at ¶ 210).

19          The motion is DENIED in all other respects.

20

21          Dated this 22nd day of December, 2014.

22

23          *Robert S. Lasnik*

24          Robert S. Lasnik
            United States District Judge

25

26