1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                                    )
ULTIMATEPOINTER, LLC,                        )
                                                                    )          Case No. C14-0865RSL
                                Plaintiff,           )
                                                                    )
        v.                                                       )
                                                                    )          ORDER GRANTING DEFENDANTS'
NINTENDO CO., LTD., and NINTENDO    )          MOTION FOR SUMMARY
OF AMERICA, INC.,                                 )          JUDGMENT OF NON-INFRINGEMENT
                                                                    )
                                Defendants.     )
_____)

        This matter comes before the Court on "Defendant Nintendo's Motion for
Summary Judgment."  Dkt. # 492.  Summary judgment is appropriate if, viewing the evidence in
the light most favorable to the nonmoving party, "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012).
Having reviewed the memoranda, declarations, and exhibits submitted by the parties, having
heard the arguments of counsel, and taking the evidence in the light most favorable to
UltimatePointer, the Court finds as follows:

**A.  "Direct Pointing Device"**

        All of the claims asserted in this litigation recite a "pointing device" or a
"handheld device."  In the context of his Markman ruling, the Honorable Leonard Davis
determined that both terms refer to a "direct," as opposed to an "indirect," pointing device.

1

2

3

4

5

6

7

8

9

10

The inventors classify pointing devices into two categories, direct-pointing devices and indirect-pointing devices. '321 Patent, 1:55–57. The '321 Patent defines "direct pointing device" as a "device[] . . . for which the physical point-of-aim coincides with the item being pointed at, i.e., it lies on the line-of-sight." *Id*. at 1:57–60. The specification characterizes the invention as a whole as a direct-pointing system that improves upon both indirect-pointing devices and prior direct-pointing devices. *Id*. at 2:1–38. Subsequently, the specification refers to the system as a "direct-pointing device." '321 Patent, 24:29–30. The patent contemplates indirect pointing only when direct pointing is "not possible or not desired," for example, when the pointing device is out of range of the base station or too far from where it was calibrated. 29:66–30:28. In such cases, indirect pointing may be used "as described in the cited prior art." *Id*. at 30:26–27. Thus, although the specification mentions indirect pointing, it is clear that the invention is aimed at direct pointing. Therefore, "*pointing device*" is construed as "direct pointing device."

11

12

Dkt. # 268 at 6 (internal footnote omitted). Nintendo seeks summary judgment on the ground that plaintiff has failed to provide any evidence that the Wii remote is a "direct pointing device."

13

14

15

16

17

18

19

20

21

22

Plaintiff points out that the Wii remote is designed to give the appearance and imitate the functionality of a "direct pointing device" when used as directed:  the Wii Operations Manual instructs the user to "[p]oint the remote at a specific place on the TV screen" in order to move or control the objects imaged thereon.  In addition, Nintendo has in the past referred to or described the remote as a direct pointing device.  Nintendo internally calls the operative part of the Wii remote a "DPD," short for "direct pointing device."  In prior litigation involving an invention that claimed an indirect pointing system, Nintendo's then-expert opined that the "Wii uses an absolute pointing technique to control a cursor on the screen.  Users point the Wii Remote directly at the screen, as if using a laser pointer."  Decl. of Thomas L. Warden (Dkt. # 517), Ex. 9 at 4.  Both parties agree that a laser pointer is a "direct pointing device."

23

24

25

26

These statements notwithstanding, the Wii remote is not, in fact, a direct pointing device as described by the patents and Judge Davis.  Although the system can be set up to give the impression that the user is placing the cursor on the screen at the point of aim, in reality it is the remote's interaction with the Wii sensor bar, not the screen, that is relevant to the placement

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT                -2-

1   of the cursor.  If the sensor bar is place directly above or below the screen as directed in the

2   Operations Manual, the remote will pick up the LED lights when it is aimed at the screen and

3   approximate the intersection of the physical point-of-aim with the screen, giving the user the

4   impression of direct pointing.  But the Wii does not collect or generate the data that would be

5   necessary to accurately place a cursor on the screen through "direct pointing," and the user is

6   often compelled to adjust the location of the cursor using visual feedback even when the sensor

7   bar and the screen are closely aligned.  If the sensor bar is placed elsewhere, such as

8   perpendicular to the screen or behind the user, the user must aim the remote toward the sensor

9   bar (even if that means pointing it away from the screen) in order to have the cursor appear on

10  the screen.  The terms "pointing device" and "handheld device," as construed, contemplate a

11  product that places the cursor on the screen at the physical point of aim.  The Wii does not do

12  that.  Nintendo is therefore entitled to a summary determination of non-infringement on all of the

13  asserted claims.

14  **B.  "Image Sensor"**

15          Claims 1, 3, 5, 6, and 12 of the '729 patent recite a handheld device containing an

16  "image sensor."  Judge Davis construed the "image sensor" to mean "a device that measures the

17  intensity of reflected light from an image."  Dkt. # 268 at 28.  UltimatePointer has taken the

18  position that Nintendo's product satisfies this limitation because the sensor located at the end of

19  the Wii remote senses light from the infrared LEDs on the Wii sensor bar.  This argument fails

20  for two reasons.  First, the light emitted from the LEDs is not an "image" as that term is used in

21  the '729 patent.  Second, there is no evidence from which a reasonable jury could conclude that

22  the Wii sensor "measures the intensity of reflected light."  The experts agree that the light from

23  the Wii sensor bar is a combination of light emanating directly from the LEDs and light that

24  bounces off of (*i.e.*, is reflected by) the surrounding reflector cups.  The sensor at the end of the

25  Wii remote cannot distinguish between the direct and reflected light and does not, therefore,

26  "measure[] the intensity of reflected light" as required by the claims of the '729 patent.  Simply

1    measuring the intensity of all light coming from the LEDs does not satisfy the claim limitation.

2    Thus, Nintendo is entitled to a summary determination of non-infringement on claims 1, 3, 5, 6,

3    and 12 of the '729 patent.

4    **C.  "First Angle" and "Second Angle"**

5        Claim 12 of the '321 patent claims a method for controlling the placement of a

6    cursor on a computer screen image that involves "measuring a first angle between a pointing line

7    and a first line" and "measuring a second angle between said pointing line and a second line."

8    The "pointing line" is the "line that extends in the direction of pointing."  Dkt. # 268 at 12.  The

9    "first" and "second" lines both are "related in a predetermined way to a geographic reference."

10   '321 patent at 35:17-21.

11       UltimatePointer has taken the position that the "first line" is the line formed by the

12   LED lights in the Wii sensor bar.  The angle between the pointing line and this "first line"

13   obviously depends on where the Wii user is standing (or sitting).  Assuming, for purposes of this

14   discussion, that the user is standing directly in front of the Wii sensor bar, the angle between the

15   pointing line and the line drawn through the sensor bar LEDs will be approximately 90°.  See

16   Dkt. # 530 at 10, Fig. N.  That is not, however, the "first angle" as far as UltimatePointer is

17   concerned.  Rather, plaintiff argues that the Wii system measures a "roll" angle reflecting the

18   amount of twist the user gives the remote around the pointing line.  That angle is measured

19   between the line drawn through the sensor bar LEDs (the "first line") and another line drawn

20   through the x or pitch axis of the Wii remote.  See Dkt. # 516 at 31, Fig. 22; Dkt. # 530 at 11,

21   Fig. P.  When the remote is twisted or rolled around the pointing line, the line through the x or

22   pitch axis swings up or down from the horizon line formed by the LED sensor lights, creating

23   the angle that plaintiff says is measured in the Wii system.  That angle, however, is not between

24   the pointing line and the "first line" identified by UltimatePointer[1] and does not, therefore,

25

26   _____

[1] Assuming the user has not wandered around the room, the angle between the pointing line and the line drawn through the sensor bar LEDs remains in the 90° range even if the user twists or rolls the

1  satisfy the limitation of claim 12 of the '321 patent.

2          UltimatePointer's arguments regarding the "second line" and "second angle" fail

3  for the same reasons.  Plaintiff's experts identify the "second line" as a vertical line in the

4  direction of gravity.  Assuming the user is holding the Wii remote in a generally horizontal

5  position, the angle between the pointing line and that second line will again approximate 90° and

6  will not change regardless of whether the user twists or rolls the remote around the pointing line.

7  See Dkt. # 530 at 11, Fig. R.  The angle UltimatePointer relies upon to satisfy the "second angle"

8  limitation is formed between the vertical gravity line and another line drawn through the z or

9  yaw axis of the Wii remote, which swings left or right from vertical as the remote is twisted or

10  rolled.  See Dkt. # 516 at 31, Fig. 22; Dkt. # 530 at 12, Fig. T.  Because that angle is not between

11  the pointing line and the "second line" identified by UltimatePointer, the "second angle"

12  limitation is not satisfied.

13  **D.  Direct, Contributory, and Indirect Infringement**

14          Claim 12 of the '321 and the '729 patents are method claims that can be infringed

15  only by use.  UltimatePointer does not oppose summary judgment on its direct infringement

16  claims (recognizing that they offer no remedy beyond that which is available on its indirect

17  infringement claims).

18          A person is liable for contributory infringement if he "offers to sell or sells . . . a

19  material or apparatus for use in practicing a patented process, constituting a material part of the

20  invention, knowing the same to be especially made or especially adapted for use in an

21  infringement of such patent, and not a staple article or commodity of commerce suitable for

22  substantial noninfringing use."  35 U.S.C. § 271(c).  Nintendo argues that the Wii system has

23  substantial noninfringing uses, such as playing games, browsing the internet, or watching

24  movies, which preclude a finding of contributory infringement.  UltimatePointer counters that

25  the Wii menu function is an integral part of the accused systems that, in most instances, must be

26  

Wii remote around the pointing line.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -5-

1   used to access the noninfringing activities identified by Nintendo, and that the existence of

2   additional, noninfringing functions does not change the fact that Nintendo is contributing to

3   infringement.

4           Faced with a similar argument in Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d

5   1301 (Fed. Cir. 2009), the Federal Circuit considered a hypothetical where a software program

6   had five features, each of which infringed a different patent.  If Nintendo's argument in this case

7   (and Microsoft's argument in Lucent Technologies) were correct, the hypothetical software

8   seller "can never be liable for contributory infringement of any one of the method patents

9   because the entire software program is capable of substantial noninfringing use.  This seems

10  both untenable as a practical outcome and inconsistent with both the statute and governing

11  precedent."  Id. at 1320.  Instead, the court found that where the infringing feature is suitable

12  only for infringing use and is included in a product with other, noninfringing features, the jury

13  could reasonably conclude that defendant intended computer users to use the feature and was

14  therefore contributing to infringement.  Id. at 1320-21.  In Lucent Technologies, the infringing

15  feature was a single tool offered in Microsoft's Outlook program:  customers might or might not

16  use the feature, but any use of the tool would infringe the patent.  In this case, the infringing

17  feature – the Wii menu function – is almost always utilized by the user.  The analysis of Lucent

18  Technologies applies with even more force in this case.  The Court finds that a reasonable jury

19  could conclude that Nintendo intended Wii users to use the menu function and that the only way

20  to use that function in the accused device allegedly infringed plaintiff's method claims.

21          With regards to plaintiff's claim of indirect infringement, Nintendo argues that the

22  claim was abandoned when plaintiff provided expert reports that did not discuss indirect

23  infringement.  Nintendo does not, however, show that proof of indirect infringement of a method

24  claim requires expert testimony or that the record is devoid of evidence to support such a claim.

25  UltimatePointer has not affirmatively withdrawn its indirect infringement claim, and Nintendo's

26  prior declaration does not make it so.  Defendant has not shown that it is entitled to summary

1    judgment on the indirect infringement claim.

2

3         For all of the foregoing reasons, defendant's motion for summary judgment is

4    GRANTED.  Because defendant is entitled to summary judgment of noninfringement on the

5    remaining asserted claims, namely claim 12 of the '321 patent and claims 1, 3, 5, 6, and 12 of

6    the '729 patent, plaintiff cannot succeed on its claims of contributory and indirect infringement.

7

8         Dated this 22nd day of December, 2014.

9

10                    *Robt S Lasnik*

11                    Robert S. Lasnik
                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -7-