UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
ULTIMATEPOINTER, LLC, )
) Case No. C14-0865RSL
                 Plaintiff, )
    v. )
) ORDER GRANTING IN PART
NINTENDO CO., LTD., and NINTENDO ) DEFENDANTS' MOTION FOR
OF AMERICA, INC., ) ATTORNEY'S FEES
)
                 Defendants. )
_____)

This matter comes before the Court on "Defendant Nintendo's Motion for Fees." Dkt. # 606.[1] Nintendo seeks an award of $7,406,362.99 under the inherent powers of the Court and/or the statutory authorization provided in 35 U.S.C. § 285.[2] Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[3] the Court finds as follows:

Despite the "American Rule" against fee-shifting, courts retain the inherent power to award fees to the prevailing party upon a showing of "willful disobedience of a court order" or actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975). In addition, 35 U.S.C.

---

[1] An unredacted sealed version of the motion is found at Dkt. # 607.

[2] The Court has not considered defendants' one-sentence request for sanctions under 28 U.S.C. § 1927. Dkt. # 606 at 4 n.4.

[3] This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR ATTORNEY'S FEES

1  § 285 states that "[t]he court in exceptional cases may award reasonable attorney fees to the
2  prevailing party."  The Supreme Court defines an "exceptional case" as "one that stands out
3  from others with respect to the substantive strength of a party's litigating position (considering
4  both the governing law and the facts of the case) or the unreasonable manner in which the case
5  was litigated."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., __ U.S. __, 134 S. Ct.
6  1749, 1756 (2014).  The statute is inherently flexible, and district courts are to evaluate the
7  totality of the circumstances and exercise their equitable discretion after considering factors such
8  as frivolousness, motivation, objective unreasonableness, and/or the need to compensate or deter
9  parties.  Id. (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).  Although it rejected the
10 more rigid analysis applied by the Federal Circuit, the Supreme Court reiterated that the type of
11 equitable circumstances that would warrant a fee award under § 285 would remain relatively
12 "rare."  Octane Fitness, 134 S. Ct. 1753, 1756-57.

13         Defendants argue that fees are appropriate under both the inherent powers and
14 § 285 because plaintiff (a) improperly joined parties and claims in an effort to manipulate venue,
15 (b) failed to adequately analyze most of the accused products and provided opaque infringement
16 contentions, and (c) pursued the action in bad faith following construction of certain claim terms
17 on May 28, 2013.  Defendants have not shown that plaintiff's choices regarding venue or its
18 failure to voluntarily dismiss this action after May 28, 2013, violated a court order, were in bad
19 faith, or are otherwise "exceptional."  Venue was proper in Texas, and plaintiff's claims against
20 the various defendants were not meritless.  The fact that plaintiff voluntarily dismissed many of
21 the defendants after discovering that their market share and/or sales did not justify further
22 litigation does not necessarily mean that the claims were brought in bad faith or are otherwise
23 sanctionable.  With regards to the impact of the May 28, 2013, claim construction, defendants
24 use hindsight to argue that plaintiff should have realized that it would be unable to prove
25 infringement and immediately dismissed the case.  Defendants offer no case law or other
26 authority that imposes on a litigant an affirmative duty to abandon a claim, thereby waiving all

right to appeal, simply because the court issued an interlocutory order that put victory out of reach.  Nor have defendants shown that the court's construction of "direct pointing" and "image sensor" was clearly dispositive at the time.  If that were the case, one would expect defendants to promptly move for summary judgment.  They did not, instead raising various challenges to plaintiff's infringement contentions, seeking construction of additional terms, battling over venue, and pursuing discovery for another year or so.  The summary judgment motion that ultimately resolved plaintiff's infringement claims was not filed until September 4, 2014, three months after the litigation was transferred to the Western District of Washington.  Litigating an infringement action to final judgment despite diminishing odds is not exceptional and does not establish bad faith.

        The Court is, however, concerned with the adequacy of counsel's pre-litigation analysis of most of the accused products and plaintiff's subsequent inability to articulate infringement contentions regarding those products.  Dkt. # 269 at 4-6.  Plaintiff served its original infringement contentions on June 8, 2012, identifying 1,912 Wii games.  At the time, plaintiff had acquired only 203 of the games, but deemed the other 1,700+ games substantially similar to the games in its possession.  Plaintiff was incorrect as a matter of both fact and law.  As a factual matter, some of the accused products were significantly different from the acquired games:  certain games had never been released to the market and others were used with older game systems that were incompatible with the pointing features of the Wii remote.  As a legal matter, the presiding judge determined that the contentions were deficient in that they were not precise and detailed enough to provide defendants with adequate notice of the plaintiff's theories of infringement.  Dkt. # 269 at 5.  Rather than amend the infringement contentions regarding the products that were not in its possession, plaintiff abandoned those claims on or about June 14, 2013.

        In short, plaintiff had no basis for its assumption that all of the accused games were substantially similar and therefore subject to the same infringement analysis.  The Court

finds that the unnecessary and unsupported addition of over 1,700 accused products with no attempt to substantiate the accusations was in bad faith, vexatious, wanton, and, in the absence of any reasonable justification for the expansion, deemed to be for oppressive reasons. Even in the high-stakes, high-cost context of patent litigation, this gratuitous addition of products was exceptional: it stands out from other cases because of the substantive weakness of plaintiff's litigating position and the unreasonable and unnecessary burdens the expansion imposed on this litigation.[4]

The question, then, is what portion of counsels' fees is attributable to the presence of those 1,700+ products in this action between June 8, 2012, and June 14, 2013. Defendants seek $334,127.50 in fees for all work related to the perceived deficiencies in plaintiff's infringement contentions. Decl. of Mark C. Nelson (Dkt. # 608), Ex. 16. However, that amount includes fees that were generated after plaintiff had abandoned its claims against the 1,700+ products and/or which were related to accused products that plaintiff actually had in its possession. A review of the letters, motions, and billing records between June 8, 2012, and June 14, 2013, shows that very little time was dedicated solely to the 1,700+ products. The deficiencies in the original infringement contentions were universal, and, for the most part, defendants addressed those deficiencies en masse. Certain time entries can be linked to the 1,700+ products, however, such as efforts to identify and review third-party games and an initial analysis regarding a potential summary judgment motion regarding the older games. In addition, time dedicated to certain tasks, such as reviewing the contentions and revising initial disclosures to account for all accused products, was undoubtedly increased by the addition of 1,700+ games. Having reviewed the time entries related to the infringement contentions, the Court finds that 10% of the requested fees ($33,412.75) is properly attributable to plaintiff's unsupported and

---

[4] With regards to the products that were in plaintiff's possession, defendants have shown only that plaintiff's infringement theories were amended as the patent claims were construed and were ultimately rejected. Neither fact establishes bad faith or an exceptional case.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR ATTORNEY'S FEES             -4-

unnecessary expansion of the litigation.[5]

For all of the foregoing reasons, defendants' motion for attorney's fees is GRANTED in part. Plaintiff shall pay to defendants attorneys fees in the amount of $33,412.75 within fourteen days of the date of this Order.

Dated this 9th day of March, 2015.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[5] Plaintiff's only challenge to the reasonableness of the fees charged in this litigation is based on the fact that the overall amount billed exceeds the median amount charged for this type of litigation according to the 2013 AIPLA Report of the Economic Survey. Dkt. # 634 at 12. Plaintiff does not address the reasonableness of the number of hours spent correcting deficiencies in the infringement contentions or dealing with the explosion of accused products. While there is no doubt that the case was heavily staffed on defendants' side, the Court finds that the hourly rate and the number of hours spent addressing the 1,700+ games that were added to the litigation in June 2012 were reasonable.